[Crim. No. 19043. First Dist., Div. Three. Feb. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LOWELL ERNEST SCHMIDT, JR., Defendant and Appellant.

COUNSEL

William T. Kay, Jr., and McKittrick & Kay for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FEINBERG, J.**—Appellant was charged by information with possession of marijuana for sale. (Health & Saf. Code, § 11359.)

He made a motion to suppress evidence seized pursuant to a search warrant, which motion was denied in a written opinion by the court. He then pleaded guilty. He appeals from the order denying his motion to suppress and the subsequent order granting probation.

## The Facts

### 1. Information Received From Informer

According to the affidavit of Eureka (Humboldt County) Police Officer Cleveland, dated December 28, 1977, in support of the search warrant, a confidential informer, "X," told Cleveland's fellow Officer Waters on November 17, 1977, that appellant was selling benzadrine tablets from his pickup truck. X told an Officer Madsen, on December 15, 1977, that he saw in appellant's possession in his residence two shoe boxes containing large amounts of heroin, in balloons, and cocaine, and a plastic bag full of benzadrine tablets and that appellant told him he had $80,000 derived from illegal sales hidden in his residence. On December 28, X told a Sergeant Honsal that he had again seen the shoe box of cocaine and also saw appellant counting a large amount of currency of various denominations, represented by appellant to add up to about $80,000. (The affidavit does not indicate on what dates X made these observations but, inferentially, the last was sometime after Dec. 15, 1977.)

### 2. Information in the Affidavit Tending to Show That Informer Was Generally Reliable

According to the affidavit, a Sergeant Hall of the Imperial County Sheriff's office told Officer Madsen on November 17, 1977, that in *1970* X had given information in *1970* which proved reliable in that X had set up narcotics transactions resulting in 50 arrests and 32 convictions. The affidavit further recited that on December 27, 1977, affiant Cleveland also talked to Sergeant Hall and learned that in *1970* and *1971* X had informed the sergeant of "the location of stolen property on a number of occasions" and that the latter had "been able to see and confirm these items, and that [an unspecified number of] arrests were made and convictions obtained based on the observations."

Finally, in this aspect, the affidavit recited that on November 28, 1977, X told Sergeant Honsal that there was a man (not appellant) selling capsules of cocaine at a nightclub. Officer Cleveland went to the bar and searched the man and found 12 capsules which turned out to contain quinine.

Officer Cleveland, according to the affidavit, had no knowledge of any pending charges against X.

### 3. Information Tending to Corroborate Informer's Report Concerning Appellant

On November 16, 1977, X told Officer Madsen that appellant was going to be picking up a quantity of benzadrine tablets from a boat owned by a "Christie." On November 17, 1977, Officer Cleveland saw a man, apparently the same Christie, enter a boat registered to him and exit it in the company of appellant and another man, known to Cleveland as a "small time narcotics dealer with several arrests for same." Cleveland did not see any exchanges or packages.

### 4. Search of Appellant's Residence

On the basis of the foregoing information, the Eureka Police Department on December 28, 1977, obtained a warrant to search appellant's residence, which they executed on December 29. No heroin, cocaine, or benzadrine was found. Paraphernalia for snorting cocaine and a balance beam scale were seized. No money was located except $341 in a wallet. In addition, the police found and seized a suitcase which contained 71 lids (about 4-1/2 pounds) of marijuana, which formed the basis for the present action.

### 5. Ruling on Motion to Suppress

The trial court ruled that the informer's activity in Imperial County approximately seven years ago was "somewhat remote, but it does show that a number of convictions were obtained because of information received from the informant."

In relation to the November 1977 "nightclub" and "boat" tips, the court merely observed that the tips were "not inconsistent" with what the officers observed.

Relative to the December 1977 reports that appellant had large quantities of heroin, cocaine, benzadrine and cash in his residence, the court stated: "The informant was last in defendant's home three days before the search warrant was executed. The large amount of currency and the shoe box allegedly containing cocaine could easily have been removed from the house in the interim, and the marijuana could have been obtained during this period, or it might not have been disclosed to the informant."

The court ruled that "examining the entire affidavit...there is sufficient information to provide reliability, even though the informant's information has not turned out to be exactly accurate." The informant's "batting average" need not be high, the court observed, citing *People* v. *Murphy* (1974) 42 Cal.App.3d 81, 87, 88 [116 Cal.Rptr. 889].

*The Issues*

1. *Credibility of the Informer*

■ The *Aguilar* [*Aguilar* v. *Texas* (1964) 378 U.S. 108 (12 L.Ed.2d 723, 84 S.Ct. 1509)] - *Spinelli* [*Spinelli* v. *United States* (1969) 393 U.S. 410 (21 L.Ed.2d 637, 89 S.Ct. 584)] test is stated by *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681], as follows: "[F]or an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable."

No issue is raised by appellant as to the factual nature of the informant's statement. ■ Appellant does contest the credibility of the informant and the reliability of his information as disclosed within the four corners of the affidavit.

■ A mere conclusion on the part of a police officer that an informant is reliable is not sufficient. There must also be a "showing of the underlying circumstances or...factual proof in court as to reliability and credibility." (*People* v. *Johnson* (1968) 68 Cal.2d 629, 634 [68 Cal.Rptr. 441, 440 P.2d 921].) An affidavit is insufficient where "Though the affiant swore that his confident was 'reliable,' he offered the magistrate no reason in support of this conclusion." (*Spinelli* v. *United States, supra*, 393 U.S. 410, 416 [21 L.Ed. 2d 637, 643].)

■ For purposes of our discussion, we assume that in 1970 and 1971, in Imperial County, X had demonstrated that he was a credible informant. The question then arises whether some seven years later a magistrate may reasonably conclude, without more, that the informant

is still credible. We can find no California cases that have considered the question.

To answer the question, we begin by looking to the two classes of informants and how the reliability of the informant in each class is established.

Informants may be divided into two classes—citizen informants and criminal informants.

■ The typical citizen informant is one who has no connection with the criminal element in our society and has himself been the victim of a criminal act or has observed the commission of some act which appears to be criminal. He reports this event to the police. If the police use that information in an affidavit in support of a search warrant, the credibility of the citizen informant is presumptively established if the affidavit alleges sufficient information to show that the informant is what he appears to be, namely, an ordinary citizen. (*People* v. *Smith* (1976) 17 Cal.3d 845, 850-852 [132 Cal.Rptr. 397, 553 P.2d 557].) On the other hand, the credibility of an informant who swims in the sea of crime and gives "tips" to the police is *suspect*. Unlike the citizen informant motivated by virtue who openly gives information to the police, the criminal informant, as the courts generally understate it, is "'generally motivated by something other than good citizenship.'" (At pp. 850-851.)

To establish the credibility of a criminal informant, either he must be shown to have given reliable information in the past with regard to criminal activity, *or* the information he is presently giving is corroborated. (*People* v. *Superior Court* (*Johnson*) (1972) 6 Cal.3d 704, 711-712 [100 Cal.Rptr. 319, 493 P.2d 1183]; *People* v. *Barger* (1974) 40 Cal.App.3d 662, 667 [115 Cal.Rptr. 298].)

■ Without question, the informant in the case at bar is a criminal informant as distinguished from the citizen-informant. Without question, absent his "track record" in Imperial County in 1970-1971, he would not be a credible informer.

The record before us shows that the informant disappeared from Imperial County in 1971 or 1972 for fear of retaliation for his informer activities. He surfaced in Mendocino County about seven years later and, again, as he did seven years before, he moved in the criminal world as a part of it. Nothing is known as to what his life was in that inter-

vening six years other than, so far as the affiant knows, that, at the time of the execution of the affidavit, the informant had no *pending* criminal charges.

■ We are of the view that the criminal informant though once demonstrated to be credible does not trail clouds of credibility for all times and in all places. When the criminal informant once shown to be credible ceases to be an informant for a long period of time and then reappears again in the context of a criminal investigation, he is suspect for the same reason he was suspect originally. His credibility must be reestablished; he needs a new "track record"; the old one will not do. (See *Moore* v. *State* (1971) 13 Md.App. 711 [284 A.2d 614, 618].)

■ The only "new" track record set forth in the affidavit is the nightclub incident of November 28, 1977. The informant told a police sergeant that there was a man in a nightclub selling capsules of cocaine. Officer Cleveland went to the establishment and searched the man in question. The man had capsules but they were capsules of quinine, not cocaine. We do not see this as supporting the informant's credibility. At best, he was half right but it was the unimportant half, i.e., that the man had capsules. If anything, this episode suggests that the informant jumps to erroneous conclusions and sees criminal activity where there is none.

### 2. *Reliability of Information*

If the *Aguilar-Spinelli* test is not met by a demonstration of the informer's having provided reliable information on previous occasions, it may nevertheless be met by a showing that his information as to the present occasion is supported by other information known to the authorities.

It appears to be well settled, however, that the corroborating observations must be of criminal activity. In *Spinelli*, federal agents confirmed some of the facts related by an informer, but the corroboration was held to be insufficient: "[T]he allegations detailing the FBI's surveillance of Spinelli and its investigation of the telephone company records contain *no suggestion of criminal conduct* when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip." (393 U.S. at p. 418 [21 L.Ed.2d at p. 645], (italics added.) In *People* v. *Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583], it was held that "in order for corroboration to be adequate, it must pertain to defendant's alleged *criminal* activity; accuracy of infor-

mation regarding the suspect generally is insufficient." (See *People* v. *Scoma* (1969) 71 Cal.2d 332, 338-339 [78 Cal.Rptr. 491, 455 P.2d 419].)

In the present case, the officer's observations confirmed the informer's statement that appellant would have some association with "Christie" and a boat, but there was nothing illegal about that association, and nothing that the officer observed indicated that a benzadrine transaction or any other criminal activity had taken place. The presence of a known narcotics seller did not create even a "reasonable suspicion" of criminal activity. (*Sibron* v. *New York* (1967) 392 U.S. 40, 62 [20 L.Ed.2d 917, 934, 88 S.Ct. 1889].)

### Conclusion

The motion to suppress should have been granted for the affidavit in support of the search warrant was defective in that the credibility of the informant had not been shown nor his information corroborated.

The judgment is reversed. The trial court is directed to set aside its order denying the motion to suppress and in its place enter its order granting the said motion.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied March 14, 1980.