201 Cal.App.3d 20 (1988)
246 Cal. Rptr. 855
THE PEOPLE, Plaintiff and Respondent,
v.
TERRY LEE FOSTER, Defendant and Appellant.
Docket No. B021993.
Court of Appeals of California, Second District, Division Five.
May 11, 1988.
*23 COUNSEL
Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John R. Gorey and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ASHBY, Acting P.J.
Appellant Terry Lee Foster was convicted by jury trial of three counts of robbery and three counts of false imprisonment effected by violence. (Pen. Code, §§ 211, 236, 237.) On five of the counts the jury also found that appellant personally used a deadly weapon, a knife. (Pen. Code, § 12022, subd. (b).) In a bifurcated trial the jury also found, pursuant to Penal Code section 667, that appellant had a prior conviction of a serious felony, voluntary manslaughter. The trial court sentenced appellant to a total term of 15 years and 4 months in the state prison.
On December 10, 1985, appellant and codefendant Michael Smith robbed a gas station on Palos Verdes Drive North in Lomita (count I). Smith was armed with a tire iron. On December 13, they robbed Mouws Country Store on Woodruff Avenue in Bellflower (count II). Appellant used a knife and Smith used a tire iron. On December 15, they robbed Ken's Mini Mart on Woodruff Avenue in Bellflower (count III). Appellant used a knife and Smith used a tire iron. After they obtained the money, they locked two employees and a bystander in the store's cooler (counts IV-VI). After appellant and Smith left, the victims escaped from the cooler through the soda pop display case.
The convictions were supported not only by testimony of the victims, evidence seized from Smith when he was arrested after the third robbery, and evidence seized from appellant's house and car pursuant to a search warrant, but also by the testimony of Michael Smith who entered a plea bargain and testified for the prosecution at trial, and the testimony of Barbara Daley, who was Smith's girlfriend, that she overheard conversations between appellant and Smith before and after each robbery, discussing the planning and the fruits of the robberies.
Appellant raises six contentions. Finding no merit to them, we affirm.

*24 SEARCH WARRANT
A few hours after the December 15 robbery, Michael Smith and Barbara Daley were arrested following a stop of their vehicle, which matched the description of the robbery vehicle, and which contained various items of incriminating evidence. On December 17 Sergeant Valencia of the Los Angeles County Sheriff's Department interviewed Smith and Daley, and thereafter he obtained a warrant for a search of appellant's residence and appellant's vehicle.
(1) Citing People v. Schmidt (1980) 102 Cal. App.3d 172, 177 [162 Cal. Rptr. 171], which relies on the Aguilar-Spinelli test of probable cause, appellant contends the search warrant affidavit was insufficient for lack of evidence that Smith and Daley were credible or reliable informants. However, the United States Supreme Court has disapproved the two-pronged Aguilar-Spinelli test, which the court found to be excessively technical and artificial. Instead, probable cause should be determined based on the totality of circumstances, in a practical commonsense determination whether, given all the circumstances, including the veracity and basis of knowledge of the informant, there is a fair probability of the truth of the information. (Illinois v. Gates (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].) After Proposition 8, evidence which would be admissible under the standard of Illinois v. Gates, supra, is admissible in California. (People v. Medina (1985) 165 Cal. App.3d 11, 16-17 [211 Cal. Rptr. 216].) (2) Under this test, both the magistrate in reviewing the search warrant affidavit and the trial court in denying appellant's motion to traverse the warrant (Pen. Code, § 1538.5), had sufficient basis to credit the information from Smith and Daley incriminating appellant.[1] "[E]ven if we entertain some doubt as to [Smith's] motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." (Illinois v. Gates, supra, 462 U.S. at p. 234 [76 L.Ed.2d at p. 544].) Barbara Daley was not suspected as one of the actual participants in the robberies, as she obviously did not match the physical description of the second robber. Her information about the conversations she overheard between Smith and appellant planning each of the robberies and discussing the fruits of each of the robberies afterward, her familiarity with appellant, and Smith's detailed admission of each of the robberies, naming appellant as his partner, amply provided, in the totality of the circumstances, a fair probability that contraband or evidence would be found in appellant's residence or car. (Illinois v. Gates, supra, 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].)

*25 APPELLANT'S THREATENING CONDUCT IN THE COURTROOM
(3) When Barbara Daley had completed her testimony at trial and was stepping down from the witness stand, appellant made a throat-slitting gesture to her. The witness immediately burst out, "What the hell did that mean? He's over there going like this  excuse me, Your Honor." Appellant contends the trial court erred in permitting the witness immediately to retake the stand to explain to the jury what had occurred.
This contention is without merit. A threat against a witness is relevant as indicating consciousness of guilt. (People v. Manson (1976) 61 Cal. App.3d 102, 156-157 [132 Cal. Rptr. 265]; see People v. Slocum (1975) 52 Cal. App.3d 867, 887 [125 Cal. Rptr. 442].) In Manson the defendant made a similar throat-slitting gesture while a witness was testifying.
Appellant misplaces reliance on People v. Cruz (1968) 260 Cal. App.2d 55, 60-61 [66 Cal. Rptr. 772] for his argument that this evidence was irrelevant because appellant's threatening gesture came after the witness had testified, as she was stepping down from the witness stand. Cruz acknowledged that a threat made after a witness has testified is admissible where the witness is still subject to recall. (Id. at p. 60.) The Cruz court found such authority inapplicable only because in Cruz the threat occurred after the prosecution had already rested its case. (Ibid.) Here, on the other hand, the prosecution had not rested its case; the evidence was admissible and the prosecutor could properly comment on it in argument. Appellant's citation of People v. Garcia (1984) 160 Cal. App.3d 82, 91 [206 Cal. Rptr. 468] is similarly unavailing, because that case concerned the defendant's courtroom appearance and demeanor generally, not a threat against a witness as in this case.

ADMISSIBILITY OF PRIOR CONVICTION FOR IMPEACHMENT
(4) Prior to trial appellant moved to preclude the prosecution from impeaching appellant with his prior conviction of voluntary manslaughter if appellant elected to take the stand. Exercising its discretion, the trial court properly denied appellant's motion. Subject to Evidence Code section 352, a prior felony conviction is admissible for impeachment if the conviction necessarily involves moral turpitude. (People v. Castro (1985) 38 Cal.3d 301, 306 [211 Cal. Rptr. 719, 696 P.2d 111].) Voluntary manslaughter involves moral turpitude within the meaning of Castro. (People v. Parrish (1985) 170 Cal. App.3d 336, 350-351 [217 Cal. Rptr. 700]; People v. Coad (1986) 181 Cal. App.3d 1094, 1106-1107 [226 Cal. Rptr. 386].) Appellant's prior was eight years old, which is not impermissibly remote. (People v. Burns (1987) 189 Cal. App.3d 734, 737-739 [234 Cal. Rptr. 547] [20-year-old conviction *26 held not inadmissible as a matter of law]; People v. DeCosse (1986) 183 Cal. App.3d 404, 411-412 [228 Cal. Rptr. 114] [12-year-old conviction held not inadmissible as a matter of law].)

PROOF OF PRIOR CONVICTION
(5) In a bifurcated trial after the finding of guilt, the jury found that appellant had previously been convicted of voluntary manslaughter. Appellant contends that because no fingerprint evidence was introduced, the evidence is insufficient to show that appellant Terry Lee Foster is the same Terry Lee Foster who was convicted of voluntary manslaughter. There is no merit to this contention.
The prosecution introduced certified court records of the conviction and certified records of the Department of Corrections showing the reception by the state prison of Terry Lee Foster on that same conviction. The records from the Department of Corrections included a photograph of the prisoner. The jury could satisfy itself by comparing the photo with appellant to determine if he was the same person. This was sufficient evidence to prove the prior. (See People v. Sarnblad (1972) 26 Cal. App.3d 801, 805-806 [103 Cal. Rptr. 211].)
(6) Appellant contends that the prosecutor committed Griffin error (Griffin v. California (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]) by arguing to the jury that "these documents remain uncontroverted. No one has gotten up there or introduced any evidence to controvert what these documents say." The prosecutor did not commit misconduct. Although Griffin forbids reference to a defendant's failure to take the stand, it does not prohibit a prosecutor from commenting on the failure of the defense to introduce material evidence. (People v. Ratliff (1986) 41 Cal.3d 675, 691 [224 Cal. Rptr. 705, 715 P.2d 665].) In fact, many cases discussing the sufficiency of evidence to prove a prior conviction consider the absence of any contrary evidence from the defense. (People v. Sarnblad, supra, 26 Cal. App.3d at p. 805; People v. Brucker (1983) 148 Cal. App.3d 230, 242 [195 Cal. Rptr. 808]; People v. Luckett (1969) 1 Cal. App.3d 248, 253 [81 Cal. Rptr. 539].)

CODEFENDANT'S SENTENCE
(7) Pursuant to a plea bargain, Michael Smith pleaded guilty and testified for the prosecution at trial. A term of the plea bargain was that Smith would receive a maximum of four years imprisonment. Appellant, on the other hand, was sentenced to a term of 15 years and 4 months. Appellant argues "the defendant was denied equal protection and due process and *27 should not be sentenced to more than four years." There is no merit to this contention. The only authority cited by appellant is In re Lynch (1972) 8 Cal.3d 410, 419 [105 Cal. Rptr. 217, 503 P.2d 921], which involves cruel or unusual punishment so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. Appellant does not contend that a term of 15 years and 4 months is cruel or unusual punishment for the crimes appellant committed and his prior record, he simply complains that his accomplice was sentenced to only four years. This is no valid reason to challenge appellant's sentence. A sentencing court considers not only the circumstances of the crime, but circumstances individual to each defendant. (Cal. Rules of Court, rules 421(b), 423(b).) The court and prosecution could properly consider Smith's cooperation. So long as appellant's sentence was justified by appellant's crimes, individual culpability, and record, the sentence received by an accomplice is not relevant.

PENAL CODE SECTION 654
Appellant was convicted on count III of the robbery of Ken's Mini Mart. The victim named in that robbery count was Sandra Grayson, the store employee who handed over the money demanded by the robbers from a cash register, a cigar box, and a desk drawer. After Grayson had turned over all the money, the robbers forced her and two other victims (Fern Clark, another store employee, and Charles Clark, her husband) into the store cooler and blocked their exit by pushing a hand cart against the door to the cooler. After the robbers left the store, Fern Clark was able to escape and free the other victims by crawling under a shelf in the refrigerated soda pop area and pushing open the display door.
Appellant was convicted on counts IV through VI of three counts of false imprisonment effected by violence. (Pen. Code, §§ 236, 237.) The trial court sentenced appellant consecutively on all counts, including consecutive terms of eight months (one-third the midterm) on each of the false imprisonment counts. (8) Appellant contends that the false imprisonment of the three victims was merely incidental to the robbery, and that therefore Penal Code section 654 requires that the execution of sentence on each of the false imprisonment counts be stayed.
There is no merit to this contention. The imprisonment of the victims occurred after the robbers had obtained all of the money, and therefore was not necessary or incidental to committing the robbery. Locking the victims in the store cooler was potentially dangerous to their safety and health. It is analogous to a needless or vicious assault committed after a robbery, which has long been held separately punishable and distinguishable from an *28 assault which is merely incidental to robbery. (In re Jesse F. (1982) 137 Cal. App.3d 164, 171 [186 Cal. Rptr. 841]; People v. Hopkins (1975) 44 Cal. App.3d 669, 676-677 [119 Cal. Rptr. 61]; People v. Birdwell (1967) 253 Cal. App.2d 621, 631-633 [61 Cal. Rptr. 536]; People v. Williams (1966) 244 Cal. App.2d 658, 659-663 [53 Cal. Rptr. 392]; People v. Davis (1966) 241 Cal. App.2d 51, 55-56 [50 Cal. Rptr. 215]; People v. Massie (1967) 66 Cal.2d 899, 908 [59 Cal. Rptr. 733, 428 P.2d 869].) As stated in People v. Williams, supra, 244 Cal. App.2d at page 663, "An armed robber who needlessly and viciously maims and endangers the life of his victim, even after he has consummated the purpose of his original crime, certainly deserves more severe punishment than one who limits his criminal activity to the unlawful taking of the property of another." Moreover, each false imprisonment count was punishable as a crime of violence against a separate individual. (People v. Miller (1977) 18 Cal.3d 873, 885 [135 Cal. Rptr. 654, 558 P.2d 552].) The trial court did not violate Penal Code section 654 by imposing consecutive sentences for false imprisonment.[2]
The judgment is affirmed.
Boren, J., and Kennard, J., concurred.
NOTES
[1] We take judicial notice of the search warrant affidavit in the superior court file. (People v. Hallman (1973) 35 Cal. App.3d 638, 641, fn. 1 [110 Cal. Rptr. 891].)
[2] We disagree with a concession by the Attorney General, which is based on a misreading of the record. The Attorney General states that the trial court actually intended to stay the execution of sentence on counts IV through VI. On the contrary, the record shows only that the court intended to stay the execution of sentence on the deadly weapon enhancements of counts IV through VI.