Filed 4/25/13  P. v. Quan CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LAM VI QUAN,<br><br>        Defendant and Appellant. | B238797<br><br>(Los Angeles County<br>Super. Ct. No. GA080643)<br><br> ORDER MODIFYING OPINION,<br> NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 18, 2013, be modified as follows:

On page 1, the paragraph following the caption is revised to read as follows:

APPEAL from a judgment of the Superior Court of Los Angeles County, Jared D. Moses and Dorothy B. Reyes, Judges.

There is no change in the judgment.

_____         _____         _____
     PERLUSS, P. J.                              WOODS, J.                               JACKSON, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B238797 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA080643) |
| v. | |
| LAM VI QUAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dorothy B. Reyes, Judge.  Affirmed.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant Lam Vi Quan appeals from a judgment of conviction entered after a jury found him guilty of assault on a peace officer (Pen. Code, § 245, subd. (c)), personally causing great bodily injury (*id.*, § 12022.7, subd. (a)). The trial court sentenced him to eight years in state prison.

On appeal, defendant challenges the trial court's response to a note from one of the jurors indicating that the juror saw defendant make a throat-slitting motion toward one of the prosecution witnesses. Defendant also claims error in the trial court's refusal to instruct on self-defense/defense of others. We affirm.

# FACTS

## A. *Prosecution*

At about 10:00 p.m. on July 17, 2010, San Gabriel Police Officers Nhat Huynh and Dave Casillas responded to a noise complaint at an apartment complex at 409 East Marshall Street in San Gabriel. They and their fellow officers had responded to similar complaints at that location in the past. They usually spoke to Johnny Vi Quan, the owner of the property, who was cooperative and kept everyone calm.

They heard a lot of noise coming from the rear of the property, including loud talking and yelling. When they got to the back of the property, they saw 10 to 15 men around a large table in the driveway. Many of the men were holding beer bottles, and there were numerous beer bottles on the table and scattered around the property.

As the officers approached Johnny Quan, he got out of his chair and asked them what they were doing at his house. Officer Casillas said that Johnny Quan knew why they were there and asked for his identification. Johnny Quan responded that the officer knew who he was; it was his house. Officer Casillas said he needed Johnny Quan's identification in order to issue a warning citation for noise. Johnny Quan was upset and

2

appeared to have been drinking.  Officer Huynh feared there might be trouble and radioed for backup.

Johnny's father, Phuong Hong Quan, got up from the table and approached Officer Casillas, yelling at him.  Officer Casillas told him to stop, but Phuong Quan kept coming toward him.

Bobby Minh Hoang also started to approach Officer Casillas.  Unlike the majority of the men at the gathering, Bobby Hoang was a large man, six feet two inches tall and about 205 pounds, about the size of Officers Casillas and Huynh.  Officer Huynh attempted to stop him, but he was moving too quickly.  Bobby Hoang got to within a foot of Officer Casillas.  Officer Casillas told him to back up.  Bobby Hoang put his hands on Officer Casillas's chest and pushed him back.  Officer Casillas pushed back, and Bobby Hoang fell backwards over a chair and onto the ground.

Phuong Quan attempted to get to Officer Casillas, but the officer straight-armed him to keep him at bay.  Johnny Quan yelled at Officer Casillas not to touch his father and then ran at the officer, grabbing him around the waist.  Officer Casillas grabbed Johnny Quan in a headlock and the two of them ended up on the ground, wrestling and fighting.

Officer Huynh made a second call for backup and then attempted to pull Johnny Quan off of Officer Casillas.  Phuong Quan jumped on top of Officer Casillas and held onto the lower half of his body, while Johnny Quan held his upper body from behind.  As Officer Huynh attempted to pull them off, Bobby Hoang tackled him from behind.  Bobby Hoang held Officer Huynh on the ground by wrapping his arms around the officer from behind.  Vinh Hoang Vo came over and grabbed Officer Huynh's arm to prevent him from getting up.  Officer Huynh managed to reach his radio and called out, "Expedite.  We need units now."

Defendant walked to within two or three feet behind Officer Casillas, picked up a beer bottle, and threw it at the officer's head.  Officer Casillas felt a sharp impact from the bottle and blood dripping down his forehead.  Defendant picked up five more bottles and threw them at Officer Casillas's head.

3

Li D. Liang, My Quoc Hua and Kevin Minh Ta then ran over and began hitting and kicking Officer Casillas. They also picked up beer bottles from the ground and threw them at Officer Casillas.

San Gabriel Police Officer James Drabos arrived at the scene. Li Liang, My Quoc Hua and Kevin Ta ran into the apartment building. Bobby Hoang let go of Officer Huynh and also ran into the building. Officer Huynh assisted Officer Drabos in pulling Phuong Quan off of Officer Casillas and handcuffing him. As the two officers were attempting to pull Johnny Quan off of Officer Casillas, Phuong Quan came toward them, as if he was going to attack. Officer Drabos pushed him to the ground, but he got back up. Vinh Vo and another man came over and held Phuong Quan back.

Officers Drabos and Huynh were unable to pull Johnny Quan off of Officer Casillas. Officer Drabos finally used his Taser on Johnny Quan. After the Taser was used a second time, Johnny Quan released his hold on Officer Casillas, and Officers Drabos and Huynh were able to handcuff him.

Thirty to 40 additional officers from different departments finally arrived at the scene. They went into the apartment building and located Li Liang, My Quoc Hua and Kevin Ta, who were identified by Officer Huynh, and arrested them. Other people were detained at the scene. Defendant turned himself in to the San Gabriel Police Department later that night.

Officer Casillas was taken to the hospital with a head wound and concussion, partially torn rotator cuff, and numerous abrasions. At the time of trial, he continued to suffer neurological symptoms, required physical therapy and had not returned to work.

Officer Huynh went to the hospital and received treatment for pain in his arm and shoulder. Officer Drabos was taken to the hospital for an injury to his foot occurring when he stepped on broken glass which penetrated the sole of his shoe.

**B.** *Defense*

Defendant was charged in this case along with Johnny Quan, Phuong Quan, Bobby Hoang, My Quoc Hua, Li Liang, Kevin Ta, and Vinh Vo. Kevin Ta and My Quoc Hua testified in their own defense. Li Liang had a witness testify in his defense.

### 1. Kevin Ta

Kevin Ta testified that he and his coworker, My Quoc Hua, arrived at the property at about 8:30 p.m. Kevin Ta is a handyman, and Vinh Vo had asked him to come over to repair a toilet. After Kevin Ta and My Quoc Hua determined that the toilet needed to be replaced, Vinh Vo invited them to stay and have a beer. To be polite, Kevin Ta and My Quoc Hua sat down at a table outside with a group of people.

Officers Casillas and Huynh arrived and asked everyone for their identification. Johnny Quan stood up, walked toward them and angrily asked why they were there. Officer Casillas responded that he knew why they were there. Johnny Quan refused to produce his identification and leaned forward toward Officer Casillas. Officer Casillas put his hand on Johnny Quan's face and pushed him away. Johnny Quan fell backwards into Bobby Hoang, and the two fell down.

Phuong Quan stood up and rushed toward Officer Casillas. The officer pushed him down. Johnny Quan asked why he did that and then tackled the officer, and they both fell to the ground. As they were rolling around on the ground, Vinh Vo came over and began throwing punches at Officer Casillas.

Officer Huynh came over and pulled Johnny Quan off of Officer Casillas. Phuong Quan got up and tried to get to Officer Casillas, but Kevin Ta held him back. Kevin Ta kept saying "stop" in Vietnamese. Eventually, however, Phuong Quan managed to get to Officer Casillas and got on top of him, holding onto him.

Kevin Ta saw defendant approach Officer Casillas while the officer was on the ground and strike him with a beer bottle. Then defendant went back to the table, and Kevin Ta did not see him again. He saw several beer bottles being thrown towards

Officer Casillas, but he did not see who threw them.  He saw the bottles land on the pavement, and he did not think any of them hit the officer.

Kevin Ta denied approaching Officer Casillas or throwing any bottles.  He never saw My Quoc Hua or Li Liang approach Officer Casillas or throw any bottles.

Kevin Ta also never saw Bobby Hoang approach Officer Casillas, never saw Officer Casillas push Bobby Hoang, and never saw Bobby Hoang rush or tackle Officer Huynh.

### 2.  My Quoc Hua

According to My Quoc Ha, Johnny Quan was talking to Officer Hyunh, not Officer Casillas, but My Quoc Hua did not know what was being said because he does not speak English very well.  Officer Huynh was the one who pushed Johnny Quan in the face.  Then Phuong Quan ran at him, and Officer Huynh pushed him too.

My Quoc Hua saw defendant run to the table, pick up a bottle and throw it.  When he saw defendant throwing bottles, he was scared and went inside the apartment building with Li Liang.  He never saw defendant walk up to Officer Casillas and hit him with a bottle.

Neither My Quoc Hua nor Li Liang threw a bottle at the officers.  He never approached, hit or kicked the officers.

My Quoc Hua's character witnesses testified that they never saw him get drunk or violent.  They had never known him to lie.

Dr. Mitchell Eisen testified as an expert witness on behalf of My Quoc Hua.  He testified regarding eyewitness memory and suggestibility.

### 3.  Li Liang

Binh Nguyen testified on behalf of Li Liang, whom he knew through his uncles, Johnny Quan and defendant.  Binh Nguyen is a student at the University of California Santa Barbara.  He arrived at the apartment complex with Bobby Hoang at about 9:00 p.m.  When he arrived, he saw Li Liang in front of one of the apartments, smoking a

6

cigarette. That was the only time he saw Li Liang, who did not join the group at the table outside.

Binh Nguyen went over to the table, sat down and drank a beer. Within the hour, the two police officers arrived. Officer Casillas asked Johnny Quan for identification several times, but Johnny Quan was not cooperative. Officer Casillas seemed angry. As Officer Casillas moved toward Johnny Quan, Bobby Hoang stood up to try to mediate, gesturing for people to calm down. Officer Casillas pushed Bobby Hoang down.

Johnny Quan moved toward Officer Casillas, and they started grabbing and choking each other. Binh Nguyen got up from the table and backed away, standing near Officer Huynh. Officer Huynh was talking on his radio, but he did not intervene in the fight.

Phuong Quan then got involved in the fight. Eventually, Officer Casillas and Johnny Quan ended up on the ground. When Officer Casillas got Johnny Quan in a chokehold, Phuong Quan and Vinh Vo came over to help Johnny Quan. No one else approached Officer Casillas.

Binh Nguyen saw defendant throw some bottles at Officer Casillas and heard defendant cursing. Then defendant left. Binh Nguyen did not see anyone else throw bottles.

Binh Nguyen did not see Li Liang throw any bottles or fight with Officer Casillas. He did not see Kevin Ta or My Quoc Hua, whom he met for the first time that night, throw bottles or get close to the officers.

Binh Nguyen acknowledged talking about the incident with family members who were involved. It was difficult for him to recall what he witnessed and what he heard others say about it. The most accurate statement about what occurred was the one he gave to a detective right after the incident.[1]

---

[1] A recording of that interview was played for the jury.

# DISCUSSION

## A. *Incident After Binh Nguyen's Testimony*

After Binh Nguyen's testimony was completed, the court received a note from Juror No. 3 stating: "Lam Quan glared at Bin [*sic*] shook his head left to right several times while Bin [*sic*] was looking at him. He (Lam Quan) took his left hand to his throat and with his finger moved it across his throat several times while staring at Bin [*sic*] while the attorneys and the judge went into the back room."

The court informed counsel: "So at this point, I am going to bring that juror back in and just simply ask the juror what he saw and if he can demonstrate the gesture, and then I'm going to excuse the juror. I do not plan to inquire of the juror. I don't want any questions asked of that juror, and I certainly am not going to tell the juror to disregard anything, because that's one of the points of the trial, is that they get to observe the individuals and how they respond and what they do."

The court brought out Juror No. 3, who demonstrated what defendant was doing. The court then excused the juror until the following day.

Defendant's counsel then requested that the court inquire of the other jurors whether they saw anything. The court said it was not going "to open that door up and start asking what they may or may not have seen. That is certainly something which the jurors can discuss in the jury room. That is the topic for deliberations, but it's nothing that I'm going to inquire of and potentially contaminate the other jurors." The court found Juror No. 3 credible, and there was no "need to drag any other jurors into this at this point in time."

Defendant's counsel asked if the court was keeping Juror No. 3 on the panel. The court said it was, explaining: "There's no misconduct here. He simply observed some behavior on the part of your client, which he's entitled to consider, because in-court behavior is part of what a trial is all about." Defendant's counsel objected for the record, because he was unsure of the relevant law. The court told him that if he wanted to research the matter, it would reconsider the matter the following day.

8

The following day, defendant's counsel stated that he had done some research, and "[i]t looks like it's totally in the court's discretion . . . because, basically, it's a [matter of] public policy. . . . If the court allowed that to go on, then no trial would reach a verdict because then defendants would do these things to get a mistrial." Counsel felt this placed a burden on him to make a record, so he requested that Juror No. 3 be discharged, that the entire jury panel be questioned, that Juror No. 3 be directed not to discuss his observation with the other jurors during deliberations, and that the court grant a mistrial.

The court took the position that if a defendant chooses to engage in this type of behavior in front of the jury, he has to live with his own choice. Relying on *People v. Foster* (1988) 201 Cal.App.3d 20 and *People v. Garcia* (1984) 160 Cal.App.3d 82, the court stated that "certainly, a throat-slitting motion is, I believe, highly relevant on the issue of consciousness of guilt, making what essentially appears to be a death threat to the witness. . . . [¶] Therefore, I believe it would be inappropriate to instruct . . . the juror to disregard it, and I also think it would be inappropriate to instruct him not to discuss it with the other jurors. He saw it. He can certainly raise it with the other jurors. They may have seen it. They may not have seen it. But, again, if a defendant is going to make death threats to a witness in open court while the court is in session, then in my view, he does that at his own peril, and no instruction should be given."

The court added that counsel were not to mention the incident in their arguments, "because it technically is not in evidence." The court concluded, "So I'm denying your motions at this time. I'm denying your motion for mistrial based on the authority here. And I agree that as a public policy matter if a defendant is going to engage in that type of conduct and ask for a mistrial, a defendant can get a mistrial anytime he misbehaves, so obviously we can't permit that."

Defendant contends that the trial court denied him his rights to due process and a fair trial by an impartial jury when it refused to interview the jurors to determine whether they were still capable of rendering a verdict based solely on the evidence, when it refused to admonish the jurors to disregard defendant's throat-slitting gesture, and when it refused to declare a mistrial. We disagree.

9

Our Supreme Court explained in *People v. Lewis and Oliver* (2006) 39 Cal.4th 970 that "'[a]s a matter of policy, a defendant is not permitted to profit from his own misconduct.' [Citation.] . . . Defendants may not complain on appeal about the possible effect on jurors of their own calculated misdeeds. [Citations.]" (*Id.* at p. 1030.)

In *People v. Foster*, *supra*, 201 Cal.App.3d 20, as a witness was leaving the witness stand, the defendant made a throat-slitting gesture. The witness brought it to the court's attention, and she was allowed to retake the stand to explain what had occurred. (*Id.* at p. 25.) On appeal, the court rejected the defendant's claim of error on the ground "[a] threat against a witness is relevant as indicating consciousness of guilt." (*Ibid.*)

In *People v. Garcia*, *supra*, 160 Cal.App.3d 82, two of the jurors observed the defendant making smirking or jeering expressions when a witness was testifying. (*Id.* at p. 87.) The trial court took the position that the defendant's courtroom demeanor could be considered by the jury in their deliberations. (*Id.* at p. 90.)

On appeal, the court acknowledged the reality "that jurors often will be influenced, both positively and negatively, by their perceptions and impressions of a nontestifying defendant's courtroom demeanor." (*People v. Garcia*, *supra*, 160 Cal.App.3d at p. 91.) The court recognized that "[o]rdinarily, a defendant's nontestimonial conduct in the courtroom does not fall within the definition of 'relevant evidence'" with respect to the issues at trial, and it is not relevant to credibility since the defendant is not testifying. (*Ibid.*) "Authorizing the consideration of such demeanor in the determination of guilt or innocence also runs the grave danger of inviting the jury to use the character of the accused to prove guilt—something that is wholly improper unless the defendant first presents evidence of his good character. [Citations.]" (*Ibid.*) That being the case, the court "conclude[d] that the nontestimonial behavior of a defendant while in the courtroom cannot be judicially endorsed as evidence of his guilt." (*Id.* at p. 92.) However, the jury is free to draw its own inferences from the defendant's behavior without help from the court. (*Ibid.*)

We agree with the trial court's response to the note from Juror No. 3 in the instant case. Defendant voluntarily made a gesture in view of the jury which could be

interpreted as a threat against a witness. The jury was entitled to consider his conduct as evidence of consciousness of guilt. (*People v. Foster*, *supra*, 201 Cal.App.3d at p. 25; *People v. Garcia*, *supra*, 160 Cal.App.3d at p. 92.) The trial court was not required to admonish Juror No. 3 to ignore defendant's conduct, to question the other jurors as to whether they observed defendant's behavior, or to grant a mistrial. He cannot "complain on appeal about the possible effect on jurors of [his] own calculated misdeeds" or otherwise "'profit from his own misconduct.'" (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1030.)

**B.  *Refusal to Instruct on Defense of Others***

The trial court did not include any instructions on self-defense or defense of others in the packet of instructions it intended to give. It gave the attorneys, including defendant's attorney, who observed the lack of such instructions, the opportunity to argue the matter.

Defendant's counsel, relying on *People v. Elize* (1999) 71 Cal.App.4th 605, argued that substantial evidence supported an instruction on defense of others: When Officer Casillas unjustifiably placed Johnny Quan in a chokehold after Johnny Quan tried to protect his father, defendant tried to defend Johnny Quan by freeing him from the chokehold.

In denying the request for instructions on self-defense or defense of others, the court pointed out that the officers were legitimately at the property in response to a noise complaint. It was Johnny Quan who initiated the fighting by rushing and grabbing Officer Casillas, who only then put Johnny Quan in a chokehold.

The evidence showed that defendant threw bottles at Officer Casillas's head while he was down on the ground wrestling with Johnny Quan and Phuong Quan. The court was of the opinion that "[t]here's no justification for using a bottle" in those circumstances. "And the officer is down on the ground engaged with two other people. There has to be substantial evidence of self-defense or defense of others, and I simply don't see it."

11

Defendant's counsel argued that Johnny Quan was coming to the rescue of his father and Bobby Hoang, who had been pushed. "And then the officer put him in a chokehold while he was still standing up. Then that putting the chokehold around his neck would be—from the defense perspective, is a very dangerous act committed by someone who was the initial aggressor."

The court disagreed, explaining, "By all accounts, there was a push. All right. Justified or not, there was a push, and then the push was over. It was a single push. All right. Johnny Quan then becomes, in my view, the aggressor; runs and attacks and tackles the officer. The officer is on the ground. . . . He's defenseless on the ground. He's wrestling around with numerous people, and it's—there are no weapons involved. It's a wrestling match. Your client then comes up, and he either throws a bottle at his head or cracks him over the head with a bottle while he's defenseless on the ground wrestling with a couple of people. I don't see any substantial evidence of self-defense or defense of others."

Defendant's counsel disagreed, stating, "It's the defense position that the chokehold—the jury could infer that the chokehold continued as they fell onto the ground. And given the timing that was described, that my client was responding to that as the deadly or dangerous situation—that is, [Johnny Quan] could not breathe because that's what a chokehold is."

The court responded, "Unfortunately, there's no evidence that there was any chokehold that continued on the ground. There's no evidence. In fact, all the evidence was they were scrambling around or rolling around on the ground." The court concluded there was no substantial evidence to support an instruction on defense of others.

The trial court is required to instruct the jury on a defense relied upon by the defendant only if the defense is supported by substantial evidence. (*People v. Watson* (2000) 22 Cal.4th 220, 222.) Substantial evidence is that which is reasonable, credible and of solid value. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Although all reasonable inferences must be drawn in support of the defense, the court "may not 'go beyond inference and into the realm of speculation in order to find support for [the

12

defense]. A finding . . . which is merely the product of conjecture and surmise may not be affirmed.' [Citations.]" (*People v. Memro* (1985) 38 Cal.3d 658, 695, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181.)

Instruction on defense of others is required only where there is substantial evidence of defendant's reasonable belief in the need to defend against imminent danger of death or bodily injury. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) Imminent danger means danger that existed or appeared to exist at the very moment that the defendant inflicted the assault. (*Id.* at pp. 1094-1095 (conc. opn. of Brown, J.).)

In *People v. Elize*, *supra*, 71 Cal.App.4th 605, on which defendant's counsel relied below, an instruction on self-defense was required where the "jury could find from the evidence presented that defendant was sought out and attacked by two angry women much larger than he, that he was being beaten with pipes, that this beating accounted for his broken wrist, that one of the women tried to take his handgun, and that he struggled with that woman while the other continued to beat him." (*Id.* at pp. 615-616.) The facts of the instant case are not comparable. In this case, the larger officer was attacked by two smaller men, and he and his partner tried to stop the attack without using their weapons. The attackers did not require the use of force to defend them.

Defendant argues that when Officer Casillas got Johnny in a chokehold, "[t]his is the point at which a reasonable juror could find that [defendant] was justified in coming to [Johnny Quan's] aid, since Johnny now appeared to be in a dangerous, perhaps life-threatening, situation." However, defendant fails to point to any evidence that Officer Casillas still had Johnny Quan in a chokehold at the time defendant threw the bottles or hit the officer with a bottle.

The evidence showed that after Johnny Quan rushed Officer Casillas and grabbed him around the waist, Officer Casillas grabbed Johnny Quan in a headlock and the two of them ended up on the ground, wrestling and fighting. Phuong Quan jumped on top of Officer Casillas and held onto the lower half of his body, while Johnny Quan held his upper body from behind. As Officer Huynh attempted to pull them off Officer Casillas, Bobby Hoang tackled Officer Huynh and held him on the ground, and Vinh Vo came

13

over and grabbed Officer Huynh's arm to prevent him from getting up.  It was at that point that defendant entered the fray.  Johnny Quan was no longer in a chokehold and no longer in need of defense from a "dangerous, perhaps life-threatening, situation."

There thus was no substantial evidence to support an instruction on defense of others with respect to defendant.  The trial court did not err in refusing to give such an instruction.  (*People v. Humphrey*, *supra*, 13 Cal.4th at pp. 1094-1095 (conc. opn. of Brown, J.).)[2]

## DISPOSITION

The judgment is affirmed.

JACKSON, J.

We concur:

PERLUSS, P. J.

WOODS, J.

---

[2]     In light of our conclusion that there was no error, we reject defendant's contention that cumulative error deprived him of a fair trial and requires reversal of his conviction. (*People v. Phillips* (2000) 22 Cal.4th 226, 244.)

14