Filed 10/30/23  P. v. Brooks CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCEL BROOKS,<br><br>        Defendant and Appellant. | A166129<br><br>(Alameda County<br>Super. Ct. No. 17-CR-012133A) |

A jury convicted appellant Marcel Brooks of conspiracy to commit murder and attempted murder of his 11-month-old son, and in January 2020 he was sentenced to 25 years to life in prison.  He appealed, and we affirmed the judgment.  (*People v. Brooks* (Nov. 24, 2021, A159421) [nonpub. opn.].)[1]  After we issued our opinion, Assembly Bill No. 518 (2021–2022 Reg Sess.) (Assembly Bill No. 518) became effective, amending Penal Code[2] section 654 to expand trial courts' sentencing discretion.  In light of this new legislation, the California Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause.  We then remanded for resentencing but otherwise affirmed.  (*People v.*

---

[1] We granted Brooks's request for judicial notice of the record in his prior appeal.

[2] All further statutory references are to the Penal Code.

1

*Brooks* (Mar. 23, 2022, A159421) [nonpub. opn.].)  On remand, the trial court imposed the same sentence.

Brooks now appeals from the sentence imposed on remand, claiming the trial court abused its discretion under section 654 by electing to stay the lesser term for attempted murder instead of the greater term for conspiracy to commit murder.  He also claims the court erred by failing to strike a one-year arming enhancement under section 1385, as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill No. 81).  We reject both claims and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A.    *The Proceedings Leading to Brooks's First Appeal*

The facts underlying Brooks's convictions are set forth in our March 2022 opinion.  Briefly, in 2017 Brooks was ordered to pay child support for the son he had with the son's mother (mother).  At the time, Brooks was in a relationship with Andanna Ibe, Brooks's co-defendant, with whom he had an older child and who was pregnant with another child of his.

On April 4, 2017, Brooks arranged to meet with mother and the baby at the San Leandro BART station.  Shortly before the appointed meeting time, Brooks sent mother a text message saying he had reached the MacArthur BART station, even though he was actually in Antioch.  Mother left her house with the baby, and as they were crossing the street, a woman attempted to hit them with her car.  Cell phone records showed that Brooks and Ibe called each other several times that day and that Ibe's cell phone traveled from Antioch to San Leandro shortly before the incident.

Approximately two weeks later, on April 17, 2017, Brooks asked to meet mother and the baby at a San Leandro McDonald's.  Brooks and Ibe

2

drove to San Leandro together, and surveillance video showed Ibe enter the restaurant before mother did. Brooks falsely texted mother that he was already inside the McDonald's, and mother responded that she had just arrived. She then sat at a table with the baby. Ibe approached the table and fired a single shot at the baby, missing him. Brooks and Ibe had made three calls to each other in the minutes leading up to the shooting, and they were apprehended together later that day.

Brooks was charged with conspiracy to commit murder, two counts of attempted murder based on the April 4 incident, and one count of attempted murder based on the April 17 incident. In connection with the April 17 count, it was also alleged that a principal was armed with a firearm.[3] The jury convicted Brooks of conspiracy to commit murder and the attempted murder of his son on April 17 and found true the arming enhancement, but it acquitted him of both April 4 attempted-murder charges. The trial court sentenced Brooks to 25 years to life in prison for the conspiracy conviction and stayed the terms on the remaining count and enhancement.[4]

B.     *The Proceedings Leading to This Appeal*

After we remanded for resentencing in March 2022, Brooks filed a resentencing brief urging the trial court to exercise its new discretion under

---

[3] Brooks was charged under sections 182, subdivision (a)(1), and 187, subdivision (a) (conspiracy to commit murder), and 187, subdivision (a), and 664, subdivision (a) (attempted murder). The arming enhancement was alleged under section 12022, subdivision (a)(1).

[4] Ibe was tried separately, and a jury convicted her of conspiracy to commit murder, two counts of attempted murder based on the April 4 incident, and one count of attempted murder based on the April 17 incident, as well as two firearm enhancements. The trial court also sentenced her to 25 years to life in prison. In March 2022, we affirmed the convictions but remanded for resentencing under Assembly Bill No. 518. (*People v. Ibe* (Mar. 4, 2022, A159571) [nonpub. opn.].)

Assembly Bill No. 518 to impose a term of seven years to life for attempted murder, plus one year for the accompanying arming enhancement, and stay the term of 25 years to life for conspiracy to commit murder. Observing that he would receive an indeterminate sentence either way, Brooks claimed the evidence was "most consistent with the crime of attempted murder," particularly since the jury acquitted him of the April 4 charges. He also argued that there were mitigating circumstances, including that he had no criminal history, his childhood was traumatic, and his baby son was not physically harmed.

At the July 2022 resentencing hearing, the trial court again imposed the term for conspiracy to commit murder and stayed the terms for attempted murder and the arming enhancement. The court explained that it "exercise[d] its discretion to impose the longest potential term of imprisonment" because it found that "this is a particularly cold, calculating, manipulative[,] and cruel crime" for which "it would be wholly inappropriate to exercise discretion in favor of the lesser offense."

To support its conclusion, the trial court identified several aggravating circumstances under California Rules of Court, rule 4.421. It found that (1) the crime "involved great violence, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness[,] and callousness"; (2) Brooks was vicariously armed with a weapon; (3) the victim was particularly vulnerable; (4) Brooks "induced others to participate in the commission of the crime, occupied a position of leadership or dominance of other participants in the crime"; (5) Brooks "took advantage of a position of trust or confidence to commit the offense," based on his "peculiar relationship with [Ibe]"; and (6) "[t]he manner in which the crime was carried out

4

indicates planning." In addition, the court found that Brooks "engaged in violent conduct [that] indicates a serious danger to society."

The trial court also found one mitigating circumstance under California Rules of Court, rule 4.423: that Brooks had no prior criminal record. But while the court "acknowledge[d] that [Brooks] had . . . very trying and difficult circumstances growing up," it was unable to "find on this record any evidence that he experienced psychological, physical[,] or childhood trauma" or that such trauma "was a factor in the commission of this crime."

Accordingly, the trial court resentenced Brooks to the same sentence he previously received: a term of 25 years to life in prison for conspiracy to commit murder and stayed terms of seven years to life for attempted murder and one year for the arming enhancement.

In December 2022, on remand after our decision in Ibe's case, the same trial court also resentenced Ibe in light of Assembly Bill No. 518.[5] In contrast to its resentencing of Brooks, the court in Ibe's case exercised its discretion under amended section 654 to stay the term for conspiracy to commit murder and imposed a total sentence of 16 years to life in prison.

## II.
### DISCUSSION

*A.     The Trial Court Did Not Err Under Section 654.*

Brooks claims the trial court abused its discretion under section 654 by imposing the greater term for conspiracy to commit murder instead of the lesser term for attempted murder. We are not persuaded.

When Brooks was originally sentenced, section 654 required a trial court to sentence a defendant for an act "punishable in different ways by

---

[5] We grant Brooks's unopposed request for judicial notice of the reporter's transcript of Ibe's resentencing and her amended abstract of judgment.

5

different provisions of law . . . under the provision that provide[d] for the longest potential term of imprisonment" and stay execution of the other term. (Former § 654, subd. (a); *People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Effective January 1, 2022, Assembly Bill No. 518 amended section 654 to provide that an act "punishable in different ways by different provisions of law may be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Thus, courts now have "discretion to impose and execute the sentence of either term, which could result in . . . [execution of] the shorter sentence rather than the longer sentence." (*Mani*, at p. 379.)

We review a trial court's discretionary sentencing decisions for an abuse of discretion. (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182.) Under this standard, the court's ruling " 'will not be disturbed on appeal "unless [it] is so irrational or arbitrary that no reasonable person could agree with it." ' " (*Ibid.*) We review any factual findings underlying the ruling for substantial evidence. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640–641.)

At Brooks's resentencing hearing, the trial court found numerous aggravating circumstances and only one mitigating circumstance, which fully justified its decision under section 654 to impose the greater term for conspiracy to commit murder. In resisting this conclusion, Brooks argues that there was a "lack of record support for the proposition that [he] manipulated Ibe and induced her to commit the crimes for which she was convicted." Specifically, he claims that the probation report inaccurately stated that he gave Ibe the gun she used on April 17, and the only evidence that he manipulated her "consisted of letters [he] wrote to [her] well *after* [the two] had been arrested and charged."

The probation report's summary of the April 17 offense stated that "Brooks had been manipulating [Ibe] . . . into shooting the baby and had

6

previously given her a mask, gloves, [and] a loaded 9 mm gun, and drove her to the McDonald's in her silver Nissan Altima."  Possibly relying on this statement, the People's sentencing letter below identified as an aggravating circumstance the fact that Brooks "provided the weapon."  In his resentencing brief, Brooks objected that there was no evidence presented at trial that he gave the gun to Ibe.

We agree with the Attorney General that the challenged statement in the probation report is of no consequence, because the trial court did not rely on it in sentencing Brooks.  The court mentioned as an aggravating circumstance only that Brooks was armed "vicariously through his co-defendant," and it said nothing to indicate it believed he gave Ibe the gun.  As for the letters demonstrating that Brooks manipulated Ibe, we also agree with the Attorney General that the court was entitled to infer from them that such manipulation also occurred before the crimes.  (See, e.g., *People v. Abilez* (2007) 41 Cal.4th 472, 508 [criminal intent may be inferred from post-offense conduct].)  In turn, those letters supported the court's findings that Brooks induced Ibe to participate in the attempt to murder his son, was the dominant party, and took advantage of Ibe's trust.

Finally, we reject Brooks's suggestion that his sentence is arbitrary and capricious in light of the shorter sentence that Ibe received.  "Abuse of discretion does not necessarily occur when codefendants are given disparate sentences." (*People v. Dehnel* (1979) 99 Cal.App.3d 404, 409.)  Rather, so long as the sentence a defendant receives is "justified by [the defendant's] crimes, individual culpability, and record, the sentence received by an accomplice is not relevant." (*People v. Foster* (1988) 201 Cal.App.3d 20, 27.)  Brooks's sentence is amply justified under this standard.

B.     *The Trial Court Did Not Err by Not Striking the Arming Enhancement.*

Brooks also claims that under section 1385, as amended by Senate Bill No. 81, the trial court had to strike the arming enhancement instead of staying it.  He is incorrect.

Effective January 1, 2022, Senate Bill No. 81 amended section 1385 to add subdivision (c) of the statute.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.)  Now, the statute provides that "[n]otwithstanding any other law, the [sentencing] court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1).)  In exercising this discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  One such mitigating circumstance is that "[t]he application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(C).)

We initially question whether Brooks preserved this claim for review. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375–376.)  The amended version of section 1385 took effect several months before he was resentenced, and he provides no excuse for his failure to ask the trial court to strike the arming enhancement.  Nonetheless, we will consider the claim on the merits since the Attorney General does not argue that it is forfeited.

Several decisions have held that even though section 1385 now provides that an enhancement "shall be dismissed" in certain circumstances,

8

including if its application could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)), a sentencing court retains discretion not to dismiss the enhancement if doing so would endanger public safety. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at pp. 296–297 [collecting cases].) Brooks does not challenge this interpretation of the statute. Instead, he claims that dismissal of the arming enhancement was nonetheless mandatory because the dismissal would not "endanger public safety," which section 1385 defines as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) Brooks argues that even if the arming enhancement is dismissed, he will not be eligible for parole until he serves 25 years in prison, meaning the enhancement's dismissal could not possibly endanger public safety.

We need not decide whether dismissal of the arming enhancement would not endanger public safety as a matter of law, because we conclude that the mitigating circumstance that "[t]he application of [the] enhancement could result in a sentence of over 20 years" does not apply. (§ 1385, subd. (c)(2)(C).) Although Brooks is correct that his total sentence is over 20 years long, application of the arming enhancement did not "result" in a sentence of that length. Because it is stayed, the enhancement did not add any time at all to his sentence. And even if the enhancement had not been stayed and added one year to his total term, it still would not have caused the sentence to exceed 20 years. Thus, even if dismissing the enhancement would not endanger public safety, dismissal was not mandatory under section 1385, subdivision (c)(2)(C).

Finally, although Brooks states in passing that the trial court failed to consider the mitigating circumstances that Senate Bill No. 81 added to section 1385, he points to no indications that the court was unaware of or

9

misunderstood its new discretion under that legislation.  As the Attorney General points out, on a silent record we must presume that the court properly applied the governing law.  (See *In re Julian R.* (2009) 47 Cal.4th 487, 498–499; *People v. Lee* (2017) 16 Cal.App.5th 861, 866–867.)  Accordingly, Brooks fails to demonstrate that the court erred under section 1385.

## III.
### DISPOSITION

The judgment is affirmed.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Banke, J.


*People v. Brooks*  A166129

11