Filed 5/27/16  P. v. Garcia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040262 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F20580) |
| v. | |
| ELVIS LORENZO GARCIA, | |
| Defendant and Appellant. | |

In the course of robbing a coffee shop, defendant Elvis Lorenzo Garcia sexually assaulted an employee at knifepoint.  Defendant then barricaded the employee in an unplugged refrigerator and fled with $160.  A jury found defendant guilty of forcible sexual penetration by a foreign object, forcible sodomy, sexual battery by restraint, second degree commercial burglary, second degree robbery, and aggravated kidnapping.  The jury found numerous enhancements to be true, including allegations that defendant personally used a deadly and dangerous weapon in the commission of the offenses.  The trial court imposed an aggregate term of 65 years four months to life.

Defendant raises several claims of sentencing error on appeal.  First, he contends the trial court erred under Penal Code section 667.6[1] by imposing a full consecutive term for sodomy in addition to the term for penetration by a foreign object.  Second, he contends the court erred under section 654 by imposing separate punishments for second degree robbery and aggravated kidnapping.  Third, he contends the court erred by

---

[1] Subsequent undesignated statutory references are to the Penal Code.

imposing a one-year weapon use enhancement on the aggravated kidnapping count because the same factor was used to enhance the terms imposed for the sexual assaults. Fourth, he contends the court erred by imposing a sentence on Count Eight because it was a lesser included offense of Count Seven and the jury returned no verdict on Count Eight. The Attorney General concedes the merits of the last two claims.

We conclude the trial court did not abuse its discretion by imposing a full consecutive term for sodomy. However, we agree with defendant that section 654 requires that the term imposed for second degree robbery must be stayed. As to the remaining claims, we accept the Attorney General's concessions and we grant the requested relief. We will affirm the judgment as modified.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

In 2008, Jane Doe was a 23-year-old barista and manager at the Kind Grind coffee shop in Santa Cruz. On the morning of March 19, she arrived at the shop to prepare for opening. Shortly thereafter, defendant entered the shop, demanded money, and sexually assaulted Doe at knifepoint. After assaulting her, defendant put Doe in an unplugged refrigerator, pushed a table against the refrigerator door, and fled with $160 from the cash register. Three years later, police matched defendant's DNA to DNA found in sperm collected from Doe's body and underwear.

1. *Testimony of Jane Doe*

At trial, Doe testified as follows. At around 6:00 a.m. on March 19, 2008, she walked from her apartment in Santa Cruz to the Kind Grind coffee shop at the mouth of the lower harbor. She unlocked the doors, entered the shop, and began preparing it for opening. Doe was alone at the time. The cash register drawer, holding $160 in bills and $40 in change, had been placed in a refrigerator for safe keeping. About 15 to 20 minutes

---

[2] Defendant raises additional claims in a separate petition for habeas corpus. (*In re Garcia*, H042758.) We deny defendant's petition in a separate order on this date.

after Doe unlocked the doors, a young Latino man entered the shop.  He was wearing khaki pants, a blue shirt, and a black hooded sweatshirt with silver writing on it.

Before Doe could tell the man the shop was still closed, he rushed toward her while repeating, "Where is the money?"  Doe saw the flash of a knife in his right hand.  The man put the knife to Doe's neck, and she repeatedly told him, "Take the money.  It's in the fridge."  The man told Doe to get on the floor, whereupon she laid on the floor face down.  While holding the knife to her back, the man told Doe to take her pants off.  She pleaded, "No.  No.  Please.  No.  No.  Just take the money."  She feared he would stab or kill her.

Doe was unable to remove her pants while lying on the floor, so she pushed herself up to a kneeling position.  While she was trying to lower her pants, the man put his hand into her shirt, moved it under her bra, and groped her breast.  She again begged the man, "Please stop."  After she pulled her pants down, he began sodomizing her from behind.  He inserted his penis into her anus, removed it, and inserted it again.  At the same time, the man was licking his fingers and touching her vagina.  He reached around her stomach and put his fingers inside her vagina.  She kept begging him to stop, but he told her, "shut the fuck up," and "[b]e quiet."  The man inserted his penis into her anus two or three times.  He inserted his fingers in her vagina at the same time he was sodomizing her.  Doe could not tell whether defendant ejaculated.  She estimated the sexual assault lasted around three to five minutes.

When the man finished sodomizing Doe, he told her, "Where's the money.  Get the money."  She got up, pulled her pants up, and took him to the refrigerator where she had stored the cash register drawer.  The man followed her from behind.  She took the cash drawer out of the refrigerator and set it on a counter.  The man then took her into the kitchen and told her to get into another refrigerator.  This second refrigerator was unplugged, and there were no keys for the lock on the door.  When Doe told the man the doors would not lock, he took her to a gelato freezer, but the freezer did not have enough

3

space for her.  At that point, the man took her back to the unplugged refrigerator, and she got in.  He shut the door, and Doe heard the sound of a table being pushed against the door.  Doe stayed quiet until she heard the man leave, at which point she pushed her way out of the refrigerator.

After escaping from the refrigerator, Doe used the coffee shop's telephone to call 911.  Her cell phone was missing; she never saw it again.  After the police arrived and interviewed Doe, they took her to the Watsonville Hospital where she underwent a SART exam.  Police canvassed the area around the coffee shop but were unable to locate the assailant at that time.  When police examined the coffee shop's cash register drawer, there were no bills in it; only the change had been left behind.

2.  *Medical, Forensic, and Other Evidence*

The SART exam uncovered evidence of physical trauma consistent with Doe's description of the offense.  Doe arrived at the hospital at around 7:00 a.m. on the morning of the assault, and the exam began at 10:20 a.m.  Doe appeared to be in shock, and she reported suffering pain in the genital and anal area.  The SART nurse observed two linear red marks on Doe's neck and another linear red mark on her back.  The marks were consistent with a knife blade being pushed against Doe's skin.  Doe also had red marks on her left knee.

In the genital area, Doe exhibited redness on the labia minora consistent with pressure being applied to her skin.  She suffered two lacerations to the perineum tissue just above the anus consistent with blunt force trauma.  The lacerations appeared to be fresh or recent.  The anus exhibited redness and bruising, and a portion of the tissue had suffered an abrasion.  These injuries were consistent with blunt force from a penis.  The nurse recovered an opaque, viscous fluid with the appearance of semen from inside Doe's anal canal.  The nurse collected swabs of the fluid and preserved them for further analysis.  Doe's clothing and underwear were also collected and labeled as evidence.

4

Subsequent analysis of the fluid swabbed from Doe's anus and underwear revealed the presence of sperm. DNA extracted from the sperm was subsequently matched to defendant's DNA at 15 loci. The prosecution's DNA expert estimated the chance of a random match at 15 loci to be one in 23 quintillion for the Hispanic population.[3]

The police arrested defendant on March 11, 2011. His residence was directly adjacent to the apartment building where Doe lived at the time of the offense. At the time of his arrest, defendant was wearing a brand of shoes which featured treads having the same pattern of tread prints left on the kitchen floor of the coffee shop.

B. *Procedural Background*

In September 2011, the prosecution charged defendant by information with eight counts: Count One—Sexual Penetration by a foreign object using force and violence (§ 289, subd. (a)(1)); Counts Two and Three—Sodomy by use of force (§ 286, subd. (c)(2)); Count Four—Sexual battery by restraint (§ 243.4, subd. (a)); Count Five— Second degree commercial burglary (§ 459); Count Six—Second degree robbery (§ 211); Count Seven—Kidnapping to commit another crime (§ 209, subd. (b)(1)); and Count Eight—Kidnapping (§ 207, subd. (a)). As to Counts One, Two, and Three, the information included special allegations that defendant: (1) kidnapped the victim and the movement of the victim substantially increased the risk of harm to the victim (§ 667.61, subd. (d)(2)); (2) kidnapped the victim (§ 667.61, subd. (e)(1)); (3) committed the offense during the commission of a burglary (§ 667.61, subd. (e)(2)); and (4) personally used a dangerous or deadly weapon in the commission of the offense (§ 667.61, subd. (e)(4)). As to all eight counts, the information alleged defendant personally used a deadly and dangerous weapon. (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23).)

The case proceeded to trial in June 2013. The jury found defendant guilty on Counts One through Seven and found all allegations to be true. As to Count Eight

---

[3] A quintillion is a billion billions.

(simple kidnapping), the court instructed the jury that it was a lesser included offense of Count Seven (aggravated kidnapping), such that defendant could not be convicted of both offenses for the same conduct. Having found defendant guilty on Count Seven, the jury handed down no verdict on Count Eight.

The trial court imposed an aggregate sentence of 65 years four months to life, as follows: Count One—25 years to life, to run consecutively; Count Two—25 years to life, to run consecutively; Count Three—25 years to life, to run concurrently with the term on Count Two; Count Four—one year four months (one-third the midterm plus one-third the term for the enhancement), to run consecutively; Count Five—three years (the midterm of two years plus one year for the enhancement), stayed under section 654; Count Six— six years (the upper term of five years plus one year for the enhancement), the principal term; Count Seven—eight years to life (seven years to life plus one year for the enhancement), to run consecutively; and Count Eight—seven years (the midterm of six years plus one year for the enhancement), stayed under section 654.

## II. DISCUSSION

A. *Imposition of a Full Consecutive Term on Count Two*

Defendant contends the trial court erred at sentencing by imposing a full consecutive term of 25 years to life on Count Two (sodomy). Defendant asserts two grounds in support of this claim. First, he argues the trial court erroneously imposed the term under subdivision (d) of section 667.6 (Section 667.6(d)), which mandates a full consecutive term for certain offenses involving "the same victim on separate occasions." Defendant argues that the offenses charged in Counts One (sexual penetration by a foreign object) and Two (sodomy) occurred simultaneously, not on separate occasions, such that Section 667.6(d) did not mandate a full consecutive term for Count Two. Second, defendant contends the trial court abused its discretion by imposing a full consecutive term under subdivision (c) of section 667.6 (Section 667.6(c)). He argues that the court's stated reason for imposing a consecutive term—that the offense was

6

"horrific" in nature—did not make the crime distinctively worse than any other act of forcible sodomy. He further argues the trial court based its decision on a fact that was also an element of the crime. Finally, he contends imposition of a consecutive term was objectively unreasonable given several mitigating factors.

The Attorney General responds that Section 667.6(d) mandated a full consecutive term for the sodomy count because the defendant had an opportunity to reflect before digitally penetrating the victim. Second, the Attorney General contends the trial court was within its discretion by imposing a full consecutive term under Section 667.6(c) based on the court's finding that the offense was "horrific" in nature. Finally, the Attorney General contends defendant forfeited his claim as to discretionary imposition of the term by failing to object below.

We conclude the trial court was within its discretion to impose a full consecutive term for Count Two under Section 667.6(c). We do not reach defendant's claim under Section 667.7(d).

1. *Legal Principles*

Section 667.6 sets forth sentencing rules for defendants with multiple convictions for certain sex offenses as set forth in subdivision (e) of that section. These offenses include those charged in Counts One (forcible sexual penetration) and Two (sodomy). (§ 667.6, subds. (e)(4) & (e)(8).) Section 667.6(d) mandates a full consecutive term under certain circumstances, while Section 667.6(c) grants the court discretion to impose a full consecutive term. The trial court invoked both provisions as grounds for the sentence.

As relevant here, Section 667.6(d) mandates a full consecutive term as follows: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve [. . .] the same victim *on separate occasions*." (§ 667.6, subd. (d), italics added.) "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court

7

shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior.  Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (*Ibid.*)

"A finding that the defendant committed the sex crimes on separate occasions 'does not require a change in location or an obvious break in the perpetrator's behavior.' [Citation.]  Once the trial court has found, under section 667.6, subdivision (d), that a defendant committed the sex crimes on separate occasions, we will reverse 'only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior.' [Citation.]" (*People v. King* (2010) 183 Cal.App.4th 1281, 1325.)

Even if a full consecutive term is not mandated by Section 667.6(d) because the crimes occurred on the same occasion, the court has the discretion to impose a full consecutive term under Section 667.6(c):  "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term *may be imposed* for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion." (§ 667.6, subd. (c), italics added.)  "A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively." (*People v. Belmontes* (1983) 34 Cal.3d 335, 347 (*Belmontes*).)  "The sentencing judge is to be guided by the criteria listed in [California Rules of Court] rule 4.425, which incorporates rules 4.421 and 4.423, as well as any other reasonably related criteria as provided in rule 4.408." (Cal. Rules of Court, rule 4.426(b).)  "[W]hen a court exercises its discretion to impose a full consecutive term under section 667.6, subdivision (c), the court ideally should explain choosing consecutive rather than concurrent and full rather than

8

subordinate, though the same reason may justify both choices. At a minimum the record must reflect a recognition that two sentence choices are involved." (*People v. Senior* (1992) 3 Cal.App.4th 765, 781, citing *Belmontes*, 34 Cal.3d at p. 348.)

    2.  *Procedural Background*

The probation report recommended full consecutive terms of 25 years to life for each of Counts Two and Three in addition to the term of 25 years to life for Count One. As to circumstances in aggravation, the report stated: "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Rule 4.421 (a)(1)). The victim was particularly vulnerable due to the early hour of the day and isolated in her place of employment (Rule 4.421 (a)(3)). The defendant has engaged in violent conduct that indicates a serious danger to society (Rule 4.421(b)(1))." The only circumstance in mitigation identified in the report was the lack of any prior convictions. (Cal. Rules of Court, rule 4.423(b)(1).) The report concluded that "[t]he crimes involved separate acts of violence or threats of violence (Rule 4.425(a)(2)), thus indicating consecutive terms; per Rule 4.423(a)(2), the defendant committed multiple violent sex acts, thus indicating consecutive sentences."

In a written sentencing memorandum, defendant objected to the imposition of full consecutive sentences for Counts Two and Three in addition to the term imposed for Count One. Defendant argued that the offenses in Counts Two and Three were committed on a single occasion in a single course of uninterrupted conduct. Citing California Rules of Court rule 4.426(a)(2) (incorporating the "separate occasions" language of Section 667.6(d)), defendant argued that the offenses were not committed on separate occasions, but on the same occasion. Defendant then conceded that Section 667.6(c) allows for the discretionary imposition of a full consecutive term, but he argued that the court should not impose such a term. In response to the prosecution's assertion that a full consecutive term was justified by the "horrific" nature of defendant's conduct,

9

defendant argued that the facts of the offense were "significantly less horrific" than those of most sexual assaults. Accordingly, defendant asked the court not to impose consecutive terms for Counts Two and Three, but to impose concurrent terms for Counts One through Three.

At the sentencing hearing, defendant again argued that the offenses charged in Counts One through Three occurred on the same occasion. As to the discretionary imposition of full consecutive terms under Section 667.6(c), counsel for defendant stated, "I have addressed that at some length in my memorandum and I don't want to belabor the point." Nonetheless, counsel then briefly reiterated points raised in his sentencing memorandum as to why the court should not impose such terms. Counsel added, "And, again, this is not to gainsay the effect of this on Miss Doe and her life, but the fact of the matter is as these cases go this is not a particularly horrific incident. It was relatively short and as indicated a number of other things that we usually see happening in these cases did not take place, so I would ask the Court to exercise its discretion to impose concurrent sentences on Counts 1, 2 and 3 and thereby impose a single 25 to life."

As set forth above, the trial court imposed full, separate terms of 25 years to life on Counts One and Two. The court ordered the term on Count Two to run consecutively. The court also imposed a full term of 25 years to life on Count Three but ordered it to run concurrently with the term for Count Two. The court based the imposition of consecutive terms on both Section 667.6(d) and Section 667.6(c). As to Section 667.6(d), the court found that defendant had an opportunity to reflect between the commission of Counts One and Two. As to Section 667.6(c), the court addressed defense counsel as follows: "I appreciate your zealous advocacy on behalf of your client, but we have a good faith disagreement regarding the term horrific. I feel this was a horrific act, and I feel the Court is well within its discretion to have a consecutive sentence regarding Counts 1 and 2." The court further stated that the imposition of a full consecutive term

10

for Count Two was "based upon the Court's exercise of discretion in light of the circumstances surrounding this incident[]."

3. *Discretionary Imposition of a Full Consecutive Term Under Section 667.6(c) Was Not an Abuse of Discretion*

We first consider the trial court's imposition of a full consecutive term for Count Two under the court's discretionary power granted by Section 667.6(c). The Attorney General contends defendant failed to object to the discretionary imposition of the term, forfeiting the claim on appeal. We disagree.

Defendant initially opposed the imposition of full consecutive terms on both mandatory and discretionary grounds in his written sentencing memorandum. He specifically addressed the argument that the offense was "horrific" in nature, listing several reasons why, in his view, his conduct was comparably less culpable than other sexual assaults. He explicitly cited Section 667.6(c) and argued "that the court should exercise its discretion not to impose such consecutive sentencing." He lodged his opposition to the discretionary term again at the sentencing hearing and cited the supporting argument in his sentencing memorandum. The Attorney General argues that defendant only claimed the court "should not" use its discretion to impose the term. She claims he failed to argue that the court "could not" impose the term because it would be an "abuse of discretion" to do so. But defendant was not required to use specific words or phrases. He made known the substance of his opposition, putting the prosecution on notice and placing the issue before the court for consideration. We find defendant sufficiently stated his objections and we will consider the merits of the claim.

The trial court based its decision to impose the discretionary full consecutive term on the "horrific" nature of the offense and "in light of the circumstances surrounding this incident[]." Defendant argues that in doing so the court based the decision on a fact that was also an element of the offense. For this proposition, defendant relies on *People v. Young* (1983) 146 Cal.App.3d 729 (*Young*). In *Young*, the defendant was convicted of

11

assault with a deadly weapon, among other offenses. The trial court imposed the aggravated term of five years based on the " 'extreme serious nature of the offense,' " among other things. (*Young*, at p. 734.) The court of appeal held that the use of this factor was improper: "Although technically the fact of extreme seriousness is not an element of assault [citation], the factor should not be used to aggravate the assault term. Factors may be used to aggravate when they have the effect of 'making the offense distinctively worse than the ordinary.' [Citation.] To say an assault with a deadly weapon is an extremely serious offense merely states the obvious and does not have an effect of making the offense distinctly worse." (*Ibid.*)

As the Attorney General points out, the court in *Young* considered the trial court's use of the "extreme serious nature" factor to be an assessment of the generic crime; in other words, assault with a deadly weapon is an inherently serious offense under the legal definition of that offense. Here, the court stated, "I feel *this* was a horrific *act*." (Italics added.) The court then added that it was basing its assessment on "the circumstances surrounding this incident[]." These statements made clear that the court found the defendant's actions to be "horrific" based on facts other than those comprising the elements of the offense, making the crime "distinctively worse than the ordinary." (*Young*, *supra*, 146 Cal.App.3d at p. 734.) The court was within its discretion to make such a finding.

Using the same logic, defendant argues the court's reliance on the "horrific" nature of the offense violated California Rules of Court, rule 4.425(b)(2), which prohibits imposition of a consecutive sentence based on "[a] fact used to otherwise enhance the defendant's prison sentence." (Cal. Rules of Court, rule 4.425(b)(2).) Because defense counsel did not cite this rule below, defendant frames this claim as one of ineffective assistance of counsel. Regardless, defendant does not demonstrate how the horrific nature of the crime was used to "otherwise enhance the defendant's prison sentence." If counsel had lodged an objection under that rule, the trial court properly would have

12

overruled it. Accordingly, defense counsel did not provide ineffective assistance. (*People v. Anderson* (2001) 25 Cal.4th 543, 587 [defense counsel does not provide ineffective assistance of counsel by declining to lodge a futile objection].)

Finally, defendant argues that imposition of a full consecutive term for Count Two was objectively unreasonable based on his personal characteristics. He points to the fact that he was 18 years at the time of the offense, evidence of his low IQ, and the lack of any prior criminal record. He states that even without the additional term, he will still serve a substantial sentence, and that public safety will still be protected because the indeterminate sentence on Count One will allow the Board of Parole to assess his dangerousness before releasing him. Defendant's arguments are not without substance, but nothing in these claims demonstrates an abuse of discretion by the trial court. Furthermore, the court's adherence to state sentencing laws did not violate defendant's federal due process rights.

We conclude the court did not abuse its discretion by imposing a full consecutive term for Count Two under section 667.6(c). Because the trial court could have imposed a full consecutive term for Count Two under either Section 667.6(c) or 667.6(d), defendant's claim under the latter section is moot. Accordingly, we do not reach it. Even assuming the court erred in finding the offenses involved separate occasions under Section 667.6(d), it is not reasonably probable defendant would receive a more favorable sentence on remand because the court would impose the same sentence under section 667.6(c). (See *People v. Avalos* (1984) 37 Cal.3d 216, 233 [use of improper factors for sentencing not grounds for reversal where trial court would impose the same sentence based on the violent nature of the crime].)

B. *The Imposition of Separate Terms for Robbery and Aggravated Kidnapping Under Section 654*

As set forth above, the trial court imposed full and separate terms for Count Six (second degree robbery) and Count Seven (aggravated kidnapping). Defendant contends

both offenses were committed for a single purpose during a single indivisible course of conduct. Accordingly, he argues the trial court should have stayed the term imposed for robbery under section 654. The Attorney General contends the trial court properly declined to stay either of the terms based on an implied finding that defendant's intent in putting Doe into the refrigerator was a gratuitous act of violence separate from both the robbery and sexual assault. We conclude the kidnapping and robbery were part of one indivisible transaction with the intent and objective to take property from the victim. Accordingly, the term imposed for Count Six must be stayed.

    1. *Legal Principles*

Section 654, subdivision (a) provides, in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 thereby bars the imposition of multiple sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code. (*People v. Mesa* (2012) 54 Cal.4th 191, 195.) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20 (*Neal*), overruled in part on another ground as stated in *People v. Correa* (2012) 54 Cal.4th 331.)

"[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other,

14

he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*)

Even where reasonable minds can differ on whether multiple crimes involve a single act, we consider whether the crimes were focused on a single "intent and objective." (*Neal*, *supra*, 55 Cal.2d at p. 19; *People v. Latimer* (1993) 5 Cal.4th 1203, 1205-1206.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal*, *supra*, 55 Cal.2d at p. 19.) By contrast, "If [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he [or she] may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639 (*Beamon*).)

"Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter; the dimension and meaning of section 654 is a legal question." (*People v. Guzman* (1996) 45 Cal.App.4th 1023, 1028.) We apply the substantial evidence standard of review to the trial court's implied finding that a defendant harbored a separate intent and objective for each offense. (*People v. Braz* (1997) 57 Cal.App.4th 1, 10; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

2. *Section 654 Requires a Stay of the Sentence on Count Six*

Defendant contends the kidnapping and robbery were part of a single, indivisible transaction committed for the single purpose of completing the robbery. We agree with defendant that both offenses occurred in the same course of conduct. Upon finishing his sexual assault of Doe, defendant immediately demanded money. Because the cash

15

register tray was stored in a refrigerator, defendant moved Doe to the refrigerator, whereupon Doe removed the register tray and placed it on a counter. Defendant then took her to an empty, unplugged refrigerator, but the locks on the door did not work, so he took her to a gelato freezer. After determining she could not fit in the freezer, defendant took her back to the unplugged refrigerator and barricaded her inside by pushing a table against the door. Defendant then fled with the money from the cash register tray, completing both the robbery and the kidnapping. This sequence of events shows that the actions underlying both offenses occurred simultaneously as part of the same course of conduct.

This evidence also demonstrates that defendant kidnapped Doe for the purpose of completing the robbery. He had already committed the sexual assault by the time he initiated his asportation of the victim, but he waited until after he had secured her in the refrigerator before taking the money from the register tray. His objective in moving Doe around the coffee shop and putting her in the refrigerator was to secure the money and effectuate his escape. The jury likely found such intent by finding defendant guilty of aggravated kidnapping. For this count, the trial court instructed the jury that it must find that, when the asportation began, the defendant already intended to commit robbery, sodomy, or sexual penetration. As the prosecution stated in closing argument, defendant had already completed the sexual assault when he began moving the victim. Therefore, it is likely the jury based its verdict on Count Seven on a finding that defendant committed the kidnapping with the intent to commit robbery.

In *Beamon, supra,* the California Supreme Court applied section 654 to a defendant convicted of robbery and kidnapping for robbery. There, the defendant entered the victim's truck, ordered him to lie on the floor of the cab, and drove the truck away. After defendant drove the truck for about 15 blocks, the victim engaged defendant in a physical struggle, and the truck came to a halt. Codefendants approached the truck to assist in the robbery, but the victim escaped. Applying the intent and objective test set

16

forth above, the appellate court held both offenses were committed pursuant to a single intent and objective, i.e. the robbery of the truck. (*Beamon*, *supra*, 8 Cal.3d at p. 639.) Accordingly, the court stayed execution of the sentence for the robbery.

The facts of *Beamon* are analogous to the facts here in that the sequence of events demonstrated that both offenses occurred simultaneously with the common purpose of completing the robbery. (See also *People v. Lewis* (2008) 43 Cal.4th 415, 519 [staying sentence for robbery given conviction on kidnapping for robbery], overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912; *People v. La Stelley* (1999) 72 Cal.App.4th 1396, 1400 [shoplifter who assaulted store employee at exit could not be punished for both robbery and grand theft since defendant had single intent to steal merchandise and reach place of safety with it].)

The Attorney General argues that the kidnapping constituted a "gratuitous act" that was unnecessary to facilitate the robbery. She compares the facts of the offense to those in *People v. Foster* (1988) 201 Cal.App.3d 20 (*Foster*). There, the defendant and a codefendant robbed a gas station while armed with a knife and a tire iron. After they obtained the money, they locked two employees and a witness in a store cooler. The defendant was convicted of robbery and false imprisonment. The appellate court rejected the defendant's claim under section 654 on the ground that "[t]he imprisonment of the victims occurred *after* the robbers had obtained all of the money, and therefore was not necessary or incidental to committing the robbery." (*Id.* at p. 28, italics in original.) (See also *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 [when there is an assault after the fruits of the robbery have been obtained, and the assault is committed with an intent other than to effectuate the robbery, it is separately punishable].)

We are not persuaded that *Foster* applies to the facts of this case. In *Foster* and other cases cited by the Attorney General, the defendant committed an act of violence *after* the fruits of the robbery had been obtained. Here, defendant had not yet taken the money from the cash register tray before he barricaded Doe in the refrigerator.

17

Furthermore, his initial asportation of the victim—moving her to the refrigerator holding the cash register tray—had no other conceivable purpose apart from retrieving the money. The simultaneity of this conduct thereby demonstrated defendant's intent. We see no substantial evidence supporting a finding to the contrary. We also disagree with *Foster* to the extent it mischaracterizes the applicable test under section 654. The question is not whether the commission of the kidnapping was "necessary" to the robbery, see *Foster*, 201 Cal.App.3d at page 28; rather, the issue is whether defendant committed both offenses with the same intent and objective.

Here, defendant's actions show his intent and objective following the sexual assault was to complete the robbery and secure his escape. In addition to barricading Doe in the refrigerator, he took her cell phone to prevent her from calling the police. The Attorney General argues that he could have taken the coffee shop's telephone as well. But Doe testified that the shop had two phones. One of the two phones was missing after the robbery, apparently because defendant took that phone as well. Doe was able to call 911 because the other phone in the shop was hidden on a shelf under the counter, such that defendant was unaware of its presence. Arguably, defendant's intent and objective was to escape from the crime scene altogether—i.e. to elude capture for the sexual assaults as well as the robbery. However, the issue under section 654 in this appeal is dual punishment for Counts Six and Seven; defendant is not challenging the imposition of separate punishments for the kidnapping offense and the sexual assaults.

Finally, we note that a stay of the sentence on Count Six is consistent with the broader purpose of section 654 since the remaining sentence still reflects defendant's greater culpability. Because he was convicted of aggravated kidnapping—i.e., kidnapping *for robbery*—the trial court imposed a much harsher sentence of seven years to life as compared with a determinate sentence of six years for simple kidnapping.

For these reasons, we conclude section 654 requires that the sentence on Count Six be stayed.

18

C. *Imposition of a Sentence Enhancement for Use of a Deadly Weapon in Count Seven*

As set forth above, the jury found the allegations that defendant personally used a dangerous and deadly weapon to be true with respect to all counts. (§ 12022, subd. (b)(1).) In sentencing defendant to terms of 25 years to life on each of Counts One through Three, the trial court relied on the weapon enhancement findings and the findings that the offenses were committed in the course of a burglary. (§ 667.61, subds. (a), (c), (d)(2), (e)(2), & (e)(3).) Similarly, on Count Seven, the trial court relied on the weapon enhancement to impose an additional year of imprisonment. Defendant contends this latter use of the weapon enhancement as to Count Seven was prohibited by section 667.61, subdivision (f) because the same fact was used to enhance the sentences on Counts One through Three. The Attorney General concedes this claim.

We agree with defendant and accept the Attorney General's concession. Section 667.61, subdivision (f) provides, in part: "If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (*l*), or (m) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or the punishment under another provision of law can be imposed in addition to the punishment provided by this section." (§ 667.61, subd. (f).)

As to each of Counts One through Three, the jury found three enhancements that could have been used to impose a term of 25 to life under subdivision (a) of section 667.61: (1) that defendant kidnapped the victim (§ 667.61, subd. (e)(1)); (2) that the offense was committed in the course of a burglary (§ 667.61, subd. (e)(2)); and (3) that defendant personally used a dangerous and deadly weapon (§ 667.61, subd. (e)(3)). However, the court could not have relied on the kidnapping enhancement to impose the term of 25 years to life for any of these counts because doing so would have foreclosed

19

any punishment on Count Seven (aggravated kidnapping) under section 209, subdivision (d) [a person may not be punished under section 209, subdivision (b) and section 667.61 for the same act that constitutes a violation of both section 209, subdivision (b) and section 667.61]. Thus, as set forth above, the trial court could rely on only two factors to impose terms of 25 years to life. Because subdivision (a) of section 667.61 requires at least two of the factors listed in subdivision (e) to impose a term of 25 years to life, the court utilized the "minimum number of circumstances" required, thereby triggering the sentencing limitations set forth in subdivision (f).

Accordingly, section 667.61 prohibited the trial court from relying on the weapon use enhancement to impose an extra year on Count Seven. We will strike this term.

D. *Imposition of a Sentence on Count Eight*

Although the jury returned no verdict on Count Eight, the trial court nonetheless imposed and stayed a sentence on Count Eight. Defendant contends the court erred by imposing any sentence on this count. The Attorney General concedes this claim.

We agree with defendant and accept the Attorney General's concession. Because the jury returned no verdict on Count Eight, the trial court erred by imposing any punishment on that count. Accordingly, we will strike the term imposed on Count Eight. And, as the Attorney General concedes, we must accordingly reduce the fees imposed by the court. Under section 1465.8, the court imposed security fees totaling $320, equal to $40 for each of the eight counts. Because defendant was convicted on only seven counts, the court was only authorized to impose $280 in court security fees. (§ 1465.8, subd. (a)(1).) Similarly, under Government Code section 70373, the court imposed criminal conviction assessments totaling $240, equal to $30 for each of the eight counts. But the court was only authorized to impose $210. (Govt. Code, § 70373, subd. (a)(1).) We will reduce these fees accordingly.

20

### III.   DISPOSITION

The judgment is modified as follows:  (1) On Count Six, the term of six years (five years for the upper term and one year for the enhancement) is stayed under Penal Code section 654; (2) on Count Seven, the one-year term imposed for the weapon use enhancement is stricken; (3) on Count Eight, the term of seven years (six years for the midterm and one year for the enhancement) is stricken; (4) the total amount of court security fees imposed under Penal Code section 1465.8 is reduced from $320 to $280; and (5) the total amount of criminal conviction assessments imposed under Government Code section 70373 is reduced from $240 to $210.  The judgment is affirmed as modified.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P. J.

_____

Grover, J.