Filed 9/9/24  P. v. Hickman CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B326553 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054466) |
| v. | |
| JOE DENNIS HICKMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed with directions.

Richard Lennon and Alice Newman, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

In 2014, Joe Dennis Hickman pleaded no contest to one count of voluntary manslaughter and five counts of felony child abuse resulting in great bodily injury. He successfully petitioned for resentencing under former Penal Code section 1170.95.[1] Hickman now appeals from the trial court judgment entered after he was resentenced. We conclude Hickman has not established the trial court abused its discretion or committed reversible error. However, we agree with the parties that the abstract of judgment is inconsistent with the court's oral pronouncement of sentence. We therefore affirm with directions to amend the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The underlying proceedings*

In March 2012, the People filed an information alleging Hickman and Jennifer Zolorzano murdered Zolorzano's son Deshawn Z., assaulted Deshawn resulting in his death, and committed child abuse likely to produce great bodily injury and death.

In May 2014, Hickman accepted a plea offer. The People amended the information to add allegations that Hickman committed voluntary manslaughter on or about October 29, 2011 (§ 192, subd. (a); count 4) and five counts of felony child abuse (§ 273, subd. (a); counts 5–9). The court suggested clarifying separate date ranges for the five counts of child abuse, and the

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the law as section 1172.6 for the remainder of this opinion.

parties agreed.  Hickman pleaded no contest to the six new counts, and the People dismissed the three initial charges against him.  Hickman also admitted allegations that each felony child abuse count caused great bodily injury to a child under five (§ 12022.7, subd. (d)).

In August 2014, the trial court sentenced Hickman to an aggregate term of 26 years, consisting of 11 years for the manslaughter conviction and five consecutive sentences of three years for each felony child abuse conviction and their respective enhancements.

In February 2021, the court held a *Franklin*[2] hearing, allowing Hickman to preserve youth-related evidence for future parole hearings.  According to the testimony of Hickman's relatives, Hickman was neglected, abused, and kicked out of his home in his youth.  His stepfather punished, beat, and spanked him, and destroyed his clothes.  Hickman's mother prioritized his stepfather such that Hickman "never really had the love from his mother that a normal kid growing up would have."  Hickman's aunt and mother believed he was molested and sexually assaulted by his stepsiblings in his youth.  However, according to his mother's testimony at the *Franklin* hearing, despite his traumatic childhood and lack of supportive parenting, Hickman "never smoked [weed], never [drank] beer, whiskey, nothing . . . . He never gangbang[ed]," and would not "hurt a fly."

---

[2]     *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

3

### *Hickman's petition for resentencing*

In March 2022, Hickman filed a pro per petition for resentencing under section 1172.6, alleging he could not presently be convicted of manslaughter because of changes to sections 188 and 189. The trial court concluded Hickman made a prima facie case that he was eligible to be resentenced. It appointed counsel for Hickman, scheduled a hearing on the matter, and ordered the People to submit briefing on whether the requested relief should be granted.

The People conceded Hickman was eligible for resentencing. The court granted Hickman's petition and vacated his manslaughter sentence. It ordered the parties to submit sentencing memoranda and scheduled a resentencing hearing.

In their sentencing memorandum, the People argued count 5, the first felony child abuse conviction, should be designated as the principal term. The People asked the court to impose the upper term of six years on that count plus six years for the associated great bodily injury enhancement. The People also asked the court to redesignate the manslaughter charge to its target offense, which they argued was a separate uncharged count of felony child abuse. The People requested that the court sentence Hickman to 16 months on the redesignated target offense. The People did not seek any change to the remainder of Hickman's sentence.

Hickman's sentencing memorandum conceded he hit Deshawn with his hand, a belt, a flip-flop, and a stick. However, he argued Zolorzano was more culpable for Deshawn's death.[3]

---

[3] The trial court did not agree, finding, "I do think that he was equally culpable for the death of this minor child. This baby

4

Hickman cited evidence that Deshawn was dehydrated, malnourished, suffered from intravascular sickling, and was severely underweight; and that dehydration alone may have caused Deshawn's death.[4]  Hickman contended these maladies were Zolorzano's fault because she was Deshawn's legal and biological mother, while Hickman was merely Zolorzano's cohabiting boyfriend.  Hickman argued it would be unfair for Zolorzano, who had been recently released after successfully petitioning for resentencing, to be free while he remained imprisoned.  Hickman therefore asked the court to impose a low term sentence for the redesignated target offense under section 1172.6, subdivision (e).  He asked that all other counts and allegations be dismissed pursuant to section 1385, served concurrently, or stayed; or, alternatively, he requested probation on the remaining counts.

At the October 2022 resentencing hearing, Hickman's uncle told the court he would have a loving family and support system if released.  Hickman told the court that he took "full responsibility for what [he had] done."  He stated he was taking anger management classes and was participating in Alcoholics Anonymous and Narcotics Anonymous.  Hickman also reported he was working toward taking his general equivalency development test (an alternative to a high school diploma) but

did not deserve anything that happened to him, and they both [*sic*] equally responsible."

[4]     In support of these contentions, Hickman cited testimony from a forensic pathologist at the preliminary hearing.  The transcript of that hearing is not part of the record on appeal.

had not completed the program in the 11 years he had been incarcerated.[5]

In imposing its sentence, the court considered the probation report, its own familiarity with the case, evidence presented at the *Franklin* hearing, and the support system described by Hickman's uncle who testified during the resentencing hearing. The court recognized it was unclear who was responsible for Deshawn's death but it believed Hickman and Zolorzano were both culpable, particularly since they both admitted to physically abusing Deshawn. The court specifically noted that Hickman initially denied abusing Deshawn, but later conceded hitting the child on the day he died. It also noted Hickman had admitted to punching Deshawn and hitting the child with a stick and other objects in the past. The court was particularly concerned that Hickman admitted that he encouraged Deshawn's sister to "sock" the child, because "he act[ed] too much like a girl," and Hickman did not want Deshawn "to grow up to be gay." The court believed that Hickman acknowledged punching Deshawn in the face "so he won't be gay." The court rejected Hickman's counsel's argument that these statements may have been made in jest or

---

[5]    His lack of progress in this area concerned the court. As to Zolorzano, the court found that "she has presented . . . the court a tremendous amount of information as to what she's done to improve her life since she has been there." The court referenced Zolorzano's more impressive self-improvement efforts while in custody, in conjunction with her immediate acceptance of responsibility, in rebutting Hickman's claim that it was unfair for Zolorzano to have been released after a successful resentencing petition, while he remained in custody.

suggested by the interviewing detective. The court also found that Hickman "now has a support system that he did not have"[6] when he committed the crimes, and specifically referenced his age at the time he committed the crimes: "[P]eople at 20 are not the same people as they are at 30."

The court imposed an aggregate sentence of 19 years four months. The court selected count 5, the first felony child abuse conviction, as the principal term. It imposed a sentence of 12 years, consisting of the upper term of six years on the base charge plus the upper term of six years for the section 12022.7, subdivision (d) enhancement. This sentence was based on the court's finding that Deshawn "was very vulnerable" because of his young age, which the court concluded was an aggravating circumstance justifying the upper term.[7]

The court redesignated Hickman's manslaughter conviction to an additional felony child abuse charge, and imposed a consecutive sentence of 16 months, i.e., one-third the middle term sentence. On counts 6 and 7, the court imposed consecutive sentences of three years each, based on one-third the middle term

---

[6] The court appeared to be invoking a comparison with Hickman's prior traumatic childhood as described in part by Hickman's aunt during the *Franklin* hearing as follows: "I think if he would have had [his mother's] love and support, he would not be sitting here today."

[7] Hickman and the trial court both asserted Deshawn was 18 months old when he was killed. However, one page of the record on appeal states Deshawn was two and a half years old when he died. Regardless of the victim's precise age, count 5, for which the court imposed the upper term, covered the earliest time period, when Deshawn would have been at his youngest.

sentence for each conviction and great bodily injury enhancement. Finally, for counts 8 and 9, the court sentenced Hickman to concurrent eight-year terms, based on the four-year middle term on the charged offense and the four-year lower term on each great bodily injury enhancement. The court explained that it selected the middle term on the base term because the convictions were based on multiple incidents over a long time period, and the lower term on the great bodily injury enhancements were appropriate because "some of the other abuses did not, perhaps, rise to the higher level warranting a higher term . . . ." Hickman did not object to any aspect of the sentence.

Hickman timely appealed.

## DISCUSSION

### I. Senate Bill Nos. 1437 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

As relevant here, Senate Bill No. 1437 created a procedure, now codified at section 1172.6, in which a defendant who accepted a plea deal in lieu of a trial on a murder charge may seek resentencing if he or she could not presently be convicted of

8

murder under amended section 188. (*Gentile*, *supra*, 10 Cal.5th at p. 847; see also Sen. Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) [further amending statutory procedures in § 1172.6].) A defendant commences the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) If, after briefing and a hearing, the court determines the petitioner made a prima facie case for relief, the court must issue an order to show cause. (§ 1172.6, subd. (c).)

Within 60 days after issuing an order to show cause, " 'the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under state law as amended by Senate Bill No. 1437 . . . . [Citation.]' " (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41; § 1172.6, subd. (d)(1), (3).) Alternatively, the parties may waive the evidentiary hearing and stipulate that the petitioner is eligible for resentencing. (§ 1172.6, subd. (d)(2).)

If the petitioner is eligible for relief, the prior conviction must be vacated and the defendant resentenced on all remaining charges. (§ 1172.6, subd. (d)(3).) If the target offense underlying the vacated conviction was not charged, the conviction "shall be redesignated as the target offense or underlying felony for resentencing purposes . . . ." (*Id.*, subd. (e).)

## II.    Standard of Review

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*), superseded by statute on another ground as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 756 (*Lynch*).) "The trial

9

court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Sandoval,* at p. 847.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) However, "in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion. [Citations.]" (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 (*Gutierrez*).)

III. **The Trial Court Did Not Abuse Its Discretion in Redesignating Hickman's Manslaughter Conviction**

Hickman argues the trial court abused its discretion[8] by redesignating his manslaughter conviction as an additional count of felony child abuse. We find no abuse of discretion.[9]

---

[8] Hickman contends the appropriate standard of review for the "construction and interpretation of a statute" is de novo. However, Hickman does not argue the court misconstrued section 1170, subdivision (e). Rather, he contends this subdivision did not apply under the facts of this case.

[9] The People argue Hickman forfeited this claim by failing to raise it below. Hickman also appeared to invite any error by asking the court to impose the lower term on the target offense and citing section 1172.6, subdivision (e). (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) Hickman contends a claim

10

After the trial court vacates a conviction under section 1172.6, if the target offense underlying the conviction was not charged, the court must redesignate that conviction as the target offense.  (§ 1172.6, subd. (e).)  Although the statute does not define "target offense," that term refers to whatever underlying offense "the natural and probable consequence of which was murder."  (*People v. Arellano* (2024) 16 Cal.5th 457, 470.)  This subdivision "invest[s] the superior court with considerable discretion" in redesignating a vacated conviction as a target offense.  (*People v. Silva* (2021) 72 Cal.App.5th 505, 532.)

Here, after vacating Hickman's manslaughter conviction, the trial court redesignated that offense as an additional count of felony child abuse.  Although the trial court did not expressly cite section 1172.6, subdivision (e) in rendering its decision, no other subdivision requires or permits a court to redesignate a vacated conviction.  "Absent evidence to the contrary, we presume that the trial court knew the law and followed it."  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*).)  We therefore presume the trial court redesignated Hickman's manslaughter conviction pursuant to and in compliance with section 1172.6, subdivision (e).  (*Ramirez,* at p. 1042.)

Hickman argues that the target offense for his manslaughter conviction was separately charged.  However, Hickman fails to cite any part of the appellate record to support

---

could not be forfeited because the sentence was unauthorized, citing *People v. Scott* (1994) 9 Cal.4th 331, 354, but he fails to explain how this aspect of his sentence was unauthorized rather than merely an abuse of discretion.  In any case, to the extent Hickman arguably forfeited this argument, we exercise our discretion to consider his claim.

11

this claim. Indeed, nothing in the record suggests the court or any party determined or even considered whether one of Hickman's remaining child abuse convictions was intended to be the target offense. Hickman contends the target offense was charged as count 9 because the timeframe specified for that count—March 3, 2011 through November 29, 2011—encompassed October 29, 2011, the date of his now vacated manslaughter conviction. Yet, the overlapping time frame does not establish count 9 was based on the specific conduct that led to Deshawn's death. To the contrary: if count 9 was intended to serve as the target offense, it would have been characterized as having occurred on precisely the same date as count 4—October 29, 2011. That the two convictions were described as occurring over different timeframes indicates count 9 was not the target offense underlying Hickman's manslaughter conviction.[10]

Hickman's reliance on *People v. Fouse* (2024) 98 Cal.App.5th 1131 is misplaced. In *Fouse*, the defendant was convicted of "two counts of attempted murder of a peace officer, three counts of first degree robbery, one count of assault likely to cause great bodily injury, and one count of conspiracy to commit first degree robbery." (*Id*. at p. 1133.) After the defendant successfully petitioned for resentencing under section 1172.6, the court vacated the attempted murder convictions and redesignated them as assault. (*Fouse,* at p. 1133.) On appeal, the court found

---

[10] Some criminal statutes proscribe "continuous" conduct and therefore preclude convictions for both the continuous conduct and any individual act thereof occurring within the same time period. (*People v. Johnson* (2002) 28 Cal.4th 240, 244–245; § 288.5, subd. (c).) However, section 273a, subdivision (a) includes no such restriction.

it was "undisputed" that the target offenses for the defendant's attempted murder convictions were robbery, which occurred on the same day and during the same occurrence as the attempted murder and for which the defendant was separately charged and convicted. (*Id*. at pp. 1133–1139.) The court therefore concluded the trial court was not permitted to redesignate the attempted murder charges. (*Id*. at p. 1145.) In contrast, here, the People dispute, and Hickman has not established, that the target offense was separately charged. *Fouse* is therefore inapplicable.

## IV. The Trial Court Did Not Err in Sentencing Hickman on Count 5

Hickman next contends the trial court erred and abused its discretion in imposing the upper term on count 5 and the associated great bodily harm enhancement. We disagree.

### a. Any error in finding true the aggravating circumstance was harmless beyond a reasonable doubt

Hickman argues the trial court erred by imposing the upper term sentence on count 5, violating section 1170, subdivision (b)(2). However, Hickman forfeited this claim by failing to object during the resentencing hearing. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 242 [defendant's failure to object to upper term forfeited argument based on § 1170, subd. (b)]; *People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511 [defendant's failure to object forfeited claim that upper term was improper].) Moreover, any error was harmless.

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731) amended section 1170, subdivision (b). The amendments to subdivisions (b)(1) and (2) "make the middle term the presumptive sentence for a term of

13

imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464, disapproved on another ground in *Lynch, supra,* 16 Cal.5th at p. 769.) Circumstances in aggravation include that "[t]he victim was particularly vulnerable." (Cal. Rules of Court, rule 4.421(a)(3).)

The trial court resentenced Hickman in October 2022, nearly a year after section 1170, subdivision (b) took effect. In imposing its sentence, the court found Deshawn was "very vulnerable" on account of "his very young age." Based on this single aggravating circumstance, the court sentenced Hickman to the upper term for both the principal charge and the section 12022.7 enhancement. The facts underlying the aggravating circumstances were not found true by a jury nor stipulated to by Hickman. Yet, even assuming this aspect of the sentence violated section 1170, subdivision (b)(2), any error was harmless if we can conclude, beyond a reasonable doubt, that a jury would have found true, beyond a reasonable doubt, that Deshawn was particularly vulnerable. (*Lynch, supra,* 16 Cal.5th at pp. 768–769.) We are satisfied that a jury would have done so here.

" ' "Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." [Citation.]' [Citation.]" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.) A victim is particularly

14

vulnerable "where the age or physical characteristics of the victim, or the circumstances under which the crime is committed, make the defendant's act especially contemptible." (*People v. Bloom* (1983) 142 Cal.App.3d 310, 321–322.) A "very young" victim may qualify as "indisputably vulnerable" in the context of aggravating circumstances. (*Sandoval, supra*, 41 Cal.4th at p. 842.)

Here, Deshawn was either 18 months or two and a half years old when he died.[11] Based on his extremely young age, coupled with his small size and weakened physical condition due to dehydration and malnourishment, we find beyond a reasonable doubt that a jury would find, beyond a reasonable doubt, that Deshawn was particularly vulnerable. (Cf. *Sandoval, supra*, 41 Cal.4th at p. 842 ["very young" victim may qualify as "indisputably vulnerable"]; *People v. Garcia* (1985) 166 Cal.App.3d 1056, 1070 [two-and-a-half-year-old victim's "extreme youth coupled with her close relationship to the defendant clearly supports the court's finding" that the victim was particularly vulnerable].) Any error was therefore harmless beyond a reasonable doubt, and remand for resentencing is unnecessary.[12]

---

[11]  See *ante* footnote 7.

[12]  The People argue that a defendant's Sixth Amendment right to a jury trial does not apply during the section 1172.6 petition process. (*People v. Howard* (2020) 50 Cal.App.5th 727, 740.) Therefore, the People argue that the requirement that an aggravating circumstance be based on facts found true by a jury (§ 1170, subd. (b)(2)) does not apply during resentencing. Because we conclude any error was harmless, we need not reach this issue.

### b. *Hickman failed to establish the trial court abused its discretion by failing to impose the lower term on count 5*

Hickman contends the trial court also abused its discretion by failing to impose the lower term on count 5 and the accompanying enhancement, in violation of section 1170, subdivision (b)(6)(A) and (B).  We disagree.[13]

Senate Bill No. 567 also amended section 1170, subdivision (b)(6).  This subdivision of the new statute "creates a presumption that the sentencing court 'shall' enter a lower term sentence" when one or more mitigating circumstances contributed to the offense.  (*People v. Salazar* (2023) 15 Cal.5th 416, 419, citing § 1170, subd. (b)(6).)  Mitigating circumstances include if the

---

[13]    Hickman did not cite section 1170, subdivision (b)(6) below, nor did he object to the trial court's sentence.  Some courts have concluded a defendant forfeits any claim based on the statute under such circumstances.  (*People v. Tilley* (2023) 92 Cal.App.5th 772, 778 (*Tilley*).)  Others have reasoned that the statute creates a presumption that "does not apply if not triggered by an initial showing, but it is not subject to forfeiture."  (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994, fn. 8.)

Although Hickman's counsel asked the court to consider "during the [subsequent] sentencing" mitigating evidence which had been presented at the *Franklin* hearing and though during the sentencing Hickman referenced his youth at the time of the crimes, his counsel neglected to draw a causal connection between any mitigating factors and Hickman's crimes.  Regardless of whether counsel's failure to connect the dots constitutes a forfeiture, as discussed *post*, the record does not reflect the lack of a satisfactory rationale for such omission nor has Hickman demonstrated a reasonable probability of a different sentence had his counsel affirmatively made such a connection.

defendant "has experienced psychological, physical, or childhood trauma," or was under 26 years old when the offense was committed.  (§§ 1170, subd. (b)(6)(A), (B), 1016.7, subd. (b).)

Hickman has not established the trial court abused its discretion in declining to impose the lower term.  Section 1170, subdivision (b)(6) does not apply unless the defendant establishes one or more mitigating circumstances "was a contributing factor in the commission of the offense."  (§ 1170, subd. (b)(6).)  Even if such a causal link is established, the presumption can be overcome if "the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice."  (*Ibid*.)

Although the court did not discuss section 1170, subdivision (b)(6), Hickman has not identified any evidence in the record suggesting the court misunderstood the law or its discretion.  We presume the trial court knew and correctly applied the law.  (*Gutierrez, supra*, 174 Cal.App.4th at p. 527.)  " ' "In the absence of . . . a showing [that the court misunderstood the law or its discretion], the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).)  The record reveals that the court engaged in the balancing contemplated by section 1170, subdivision (b)(6).

In seeking resentencing, Hickman's defense counsel presented evidence of the mitigating circumstances which Hickman now argues should have compelled the court to impose the lower term on count 5.  During a presentencing hearing, Hickman's counsel asked the court to consider the *Franklin*

17

hearing evidence—which centered on Hickman's childhood trauma—"as evidence as far as mitigation." Moreover, during the sentencing hearing, Hickman's counsel reminded the court that Hickman was "young at the time . . . ." At his counsel's invitation, Hickman addressed the court about his age and lack of proper parenting skills. Hickman told the court he "didn't have the proper parenting skills that [he] needed to raise a child" at the time of the offense, and "the kid, the child, the boy so to speak that I was in 2011 is [*sic*] I am not today."

The trial court acknowledged having considered the *Franklin* hearing evidence; and it also knew how old Hickman was when he committed the offenses. The record reveals that these factors were considered by the court before pronouncing sentence, when it recognized that Hickman was not the same young person, with the same inadequate familial support system, who committed the crimes years earlier. Despite this acknowledgement, the court chose to impose the upper term.

Nothing in the record suggests the court found that Hickman's youth or traumatic childhood, on balance, compelled the imposition of the lower term. Indeed, on the other side of the scale, the court found Deshawn was particularly vulnerable on account of his youth and cited this as an aggravating circumstance supporting the upper term.[14] The court also found it "horrifying" that Hickman beat Deshawn, an 18-month-old child, and/or directed Deshawn's young sister to "sock" him, so he

---

[14]     The parties agree that the court relied on its conclusion that the victim was particularly vulnerable as an aggravating factor in imposing the upper term. They disagree as to whether that conclusion, in the absence of a finding by a jury or a stipulation by Hickman, constituted harmless error. As discussed *ante*, we believe that it did.

would not "grow up to be gay."[15] The court's emphasis on what it concluded was the homophobic impetus behind Hickman's crimes was one of the "facts and circumstances"[16] to which the court devoted considerable time in determining the appropriate term on count 5—the redesignated principal term. In short, the record indicates the court found that the aggravating circumstances, including the court's "big concern" regarding the "horrifying" evidence that Hickman abused "an 18-month-old child [who] barely knows his name and already has health issues as it is" "because [he] [didn't] want him to grow up to be gay," outweighed those in mitigation. To the extent Hickman asks us to reweigh the circumstances in aggravation and mitigation, we have no authority to do so under the abuse of discretion standard. (*Carmony*, *supra*, 33 Cal.4th at p. 379.)

In the alternative, Hickman claims his counsel was ineffective for failing to argue for the lower term presumption under 1170, subdivision (b)(6). To establish this claim, Hickman

---

[15] Hickman's counsel disputed that his client admitted any such homophobic motivation, arguing either that Hickman was "joking" or, alternatively, that the detective who interviewed him put words in his mouth. However, in contrast to section 1170, subdivision (b)(2), the court may rely on additional aggravating circumstances not found true by a jury beyond a reasonable doubt in determining whether section 1170, subdivision (b)(6) applies. (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 204; *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929.)

[16] According to the California Rules of Court, such "bigotry," as the court labeled it, could qualify as an additional aggravating circumstance weighing against imposition of the lower term: that the crime involved "a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).)

must show (1) his counsel's representation fell below the standard of reasonableness "under prevailing professional norms," and (2) that deficient performance caused him prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*); *Tilley, supra,* 92 Cal.App.5th at p. 778.)  Moreover, "[i]f the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746 (*Ledesma*), quoting *People v. Pope* (1979) 23 Cal.3d 412, 426; see *In re Avena* (1996) 12 Cal.4th 694, 721.)

Hickman has not met his burden of either:  1) establishing that his counsel's performance was deficient; or 2) that any such deficient performance was prejudicial.  Both parties acknowledge that the court had been provided mitigating evidence prior to pronouncing sentence.  They also agree that Hickman's *counsel*[17] failed to draw a causal connection for the court between Hickman's age/traumatic childhood and the commission of his crimes.

Hickman has not demonstrated the absence of any " 'satisfactory explanation' " for counsel's failure to make these connections.  (*Ledesma, supra*, 39 Cal.4th at p. 746.)  And the

---

[17]    In his Reply Brief, Hickman argues that, despite his counsel's failure to affirmatively link Hickman's youth/childhood trauma to his crimes, the court, by virtue of having considered Hickman's probation report and the evidence presented at the *Franklin* hearing, was put "on notice" that these mitigating factors contributed to Hickman's crime.

record fails to " ' "affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." [Citation.]' [Citation.]" (*People v. Majors* (1998) 18 Cal.4th 385, 403 (*Majors*).)  Instead, the record reveals that Hickman's counsel may have had strategic reasons for not highlighting the section 1170, subdivision (b)(6) presumption in seeking the lower term on the base count.

During the *Franklin* hearing, Hickman's mother testified that he did not "smoke" or "gangbang," and would "not hurt a fly." Such testimony may have caused counsel to question the wisdom of attempting to establish a causal link to his age or childhood trauma in an effort to mitigate his culpability, especially given that Hickman was seeking a similar sentence to that imposed upon Zolorzano during her earlier resentencing.

In his brief in support of Hickman's resentencing, defense counsel sought a sentence which would result in Hickman's immediate release, just as Zolorzano had been released earlier by the same court.  Anything else, counsel implored, would be a "miscarriage of justice" as counsel argued Hickman was less culpable than Zolorzano.

However, at the start of Hickman's resentencing hearing, the court did not agree that Hickman was less culpable than Zolorzano.  The court reiterated Zolorzano had immediately accepted responsibility.  The court's reference to Zolorzano's acceptance of responsibility might explain why Hickman opted not to rely on mitigating factors in an effort to "excuse" his earlier behavior, instead telling the court that he "[took] full responsibility for my part . . . .  I don't point the finger or the blame on anybody."  In short, Hickman's counsel may have determined the best tactical course of action was for Hickman to

21

accept responsibility, rather than blaming the crimes on his youth or childhood trauma.

Even if an alternative conclusion could be drawn from the record—that counsel's approach in the resentencing fell below applicable professional standards—Hickman has nonetheless failed to establish prejudice. "It is not enough to establish prejudice for defendant to propose that counsel's performance had some 'conceivable effect' on the outcome; rather, defendant must show a reasonable probability of a *different* result but for counsel's errors. ([*Strickland, supra,* 466 U.S.] at pp. 693–694.) Prejudice must be a demonstrable reality established based on facts in the record, not simply speculation as to the effect of the errors or omissions of counsel. [Citations.]" (*Tilley*, *supra*, 92 Cal.App.5th at p. 778.) Hickman argues only that the court would have "likely" found his youth and childhood trauma contributed to his offenses, and, in turn, "the court could decide if the low term was in the interest of justice." That the court "could" change its decision is entirely speculative—Hickman does not assert the court *would* have changed its decision, or even that there was a reasonable probability of such a result. (*Ibid.* [assertion that trial court "would have 'reconsidered its sentencing decision' " insufficient to establish prejudice].)

In any case, based on the totality of the record, there is no reasonable probability the court would have concluded section 1170, subdivision (b)(6) required it to impose the lower term sentence. As we have discussed, the record reveals the court was aware of the mitigating circumstances on which Hickman relies but found the aggravating circumstances far more compelling. This indicates the court found the latter circumstances outweighed the former. Thus, even if defense counsel had more

22

effectively argued that the presumption under section 1170, subdivision (b) applied, we conclude there is no reasonable probability that the court would have determined it was required to impose the lower term.

The record does not " ' "affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission," [Citation.]' [Citation.]" (*Majors*, *supra*, 18 Cal.4th at p. 403) and, even it had, Hickman cannot establish prejudice. We therefore reject Hickman's claim of ineffective assistance of counsel.

### c. *The trial court did not abuse its discretion by concluding mitigating evidence was insufficient to warrant dismissal of the enhancement on count 5*

Hickman next argues the trial court abused its discretion in declining to dismiss the great bodily injury enhancement attached to count 5 based on section 1385, subdivision (c). We find no abuse of discretion.[18]

Effective January 1, 2022, almost 10 months before Hickman's resentencing, our Legislature amended section 1385 to provide trial courts guidance in exercising their discretion to

---

[18] Hickman's sentencing memorandum asked the court to dismiss all counts and enhancements other than the principal term, citing section 1385. However, his briefing failed to identify any specific mitigating circumstances that could support such dismissal. Hickman also failed to raise the issue during the resentencing hearing. (*Carmony*, *supra,* 33 Cal.4th at pp. 375–376 [defendant's failure to invite the court to dismiss under § 1385 forfeits the issue on appeal].) Even if Hickman arguably forfeited this claim by failing to present argument based on section 1385 during the hearing, we exercise our discretion to consider his arguments.

23

dismiss sentencing enhancements. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 723–724 (*Coleman*); see also (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1).) Section 1385, subdivision (c) now instructs the trial court to "dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." It further requires the court to "consider and afford great weight" to evidence that the crime "is connected to prior victimization or childhood trauma" or that the defendant committed the offense triggering the enhancement when he or she was a juvenile. (§ 1385, subd. (c)(1), (2)(E) & (G).) Hickman argues the court failed to "afford great weight" to evidence of his childhood trauma and that he was a juvenile when he committed the offense, and also failed to consider whether these circumstances in mitigation justified dismissing the enhancement.

In contrast to section 1170, subdivision (b)(6), only one mitigating factor—evidence of childhood trauma—could have triggered the court to consider exercising its discretion to dismiss the enhancement under section 1385, subdivision (c). As to age, it is notable that the two statutes use different standards when considering age as a mitigating factor. Section 1170, subdivision (b)(6) establishes a presumption for the lower term if the defendant was "a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." Section 1016.7, in turn, defines youth as "any person under 26 years of age on the date the offense was committed." In contrast, section 1385, subdivision (c)(2)(G) compels the court, when exercising its discretion to dismiss an enhancement, to consider whether "the defendant was a juvenile when they committed the current offense," which other relevant statutes define as a person

24

under 18 years of age.  (See, e.g., Welf. & Inst. Code, § 101, subd. (a).)  There is no dispute that Hickman was at least 20 years of age when the offenses to which he pled no contest occurred, including the voluntary manslaughter charge for which he was resentenced.

Again, Hickman has failed to establish the trial court abused its discretion.  (*Coleman*, *supra*, 98 Cal.App.5th at p. 724 [appellant's burden is to "affirmatively demonstrate[]" trial court misunderstood its sentencing discretion under § 1385].)  As we have discussed, during the resentencing hearing, the court stated it considered evidence of Hickman's childhood trauma (as well as his age) when he committed the offenses.  The court did not indicate it afforded this factor "great weight," but "we presume that the trial court knew the law and followed it."  (*Ramirez*, *supra*, 10 Cal.5th at p. 1042.)

Moreover, assuming the court afforded this factor great weight, if the court also found "substantial, credible evidence of countervailing factors," such factors " 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (Aug. 15, 2024, S278309) ___ Cal.5th ___ [2024 WL 3819098, p. *4], citing *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)  Although the court never expressly found dismissal was not in the furtherance of justice, we presume the court was aware of and complied with section 1385, subdivision (c), particularly since defense counsel cited section 1385 in his sentencing memorandum.  For example, the court may have determined the potential aggravating factors described above— the cruelty of Hickman's abuse and Deshawn's particular vulnerability—neutralized any mitigating factors.  Hickman's

25

"citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion. [Citation.]" (*Coleman, supra*, 98 Cal.App.5th at p. 725.)

Hickman also contends we should remand so that the trial court can reconsider whether to exercise its discretion to impose the lower term sentence on the great bodily harm enhancement to count 5. However, he fails to identify any legal authority that would allow or compel such a result, and we therefore reject this argument.

## V. The Trial Court Did Not Abuse Its Discretion by Imposing Consecutive Sentences for Counts 4, 6, & 7

Hickman next argues the trial court abused its discretion by imposing consecutive sentences for three of his convictions, rather than concurrent sentences as Hickman requested in his sentencing memorandum. We find no abuse of discretion.

When the defendant committed "separate acts of violence" or the offenses "were committed at different times," the court is justified in imposing multiple sentences consecutively. (Cal. Rules of Court, rule 4.425(a)(2).) Here, the court found Hickman committed multiple acts of child abuse over "a long period of time." Although the trial court did not expressly connect this finding to its decision to impose consecutive sentences on counts 4, 6, and 7, we presume the court understood and complied with the law. (*Ramirez, supra*, 10 Cal.5th at p. 1042.)

Hickman initially contends there was "no evidence" that he "committed multiple acts of violence resulting in great bodily injury." This argument ignores evidence, cited by the court during sentencing, that Hickman hit Deshawn on the day of his death, admitted he hit Deshawn with a stick and other objects in the past, and punched Deshawn "with closed fists" in the past so

he would not "grow up gay." According to the probation report which the court acknowledged reviewing prior to pronouncing the revised sentence, "detectives discovered several bruises to the victim's skull, face and chin. He also had burn marks and pattern marks on his stomach and a possible rope mark on his ankle." Deshawn appeared to be an "apparent victim of continual physical abuse." Moreover, Hickman pleaded no contest to five counts of felony child abuse. A no contest plea, like a guilty plea, "admits every element of the charged crime." (*People v. Miller* (2022) 78 Cal.App.5th 1051, 1058; § 1016, subd. (3) ["a plea of nolo contendere shall be considered the same as a plea of guilty"].) He also admitted allegations that the five child abuse counts caused great bodily injury. Hickman therefore cannot dispute that he committed multiple acts of violence.

In his Reply, Hickman claims he "does not seek to raise the issue of sufficiency of the evidence of the child abuse, as respondent contends, but instead attempts to appeal to fundamental issues of fairness" because the court did not consider that his sentence is now greater than that of Zolorzano, who he argues was more culpable for Deshawn's death. However, "[s]o long as appellant's sentence was justified by appellant's crimes, individual culpability, and record, the sentence received by an accomplice is not relevant." (*People v. Foster* (1988) 201 Cal.App.3d 20, 27.) Moreover, the trial court *did* consider this point. At the start of the resentencing hearing, the court recognized that Hickman's sentencing brief argued it was "not fair" that he should receive a greater sentence than Zolorzano, though the court disagreed with Hickman's claim that he was less culpable than Zolorzano. Moreover, the court later explained it sentenced both Zolorzano and Hickman based on their

27

respective particular facts and circumstances, including what the court believed to be Zolorzano's early acceptance of responsibility.

Finally, Hickman contends the trial court erred because it failed to state reasons for its decision to impose consecutive sentences. (*People v. Edwards* (1981) 117 Cal.App.3d 436, 449 ["The reasons for imposing consecutive terms must be expressly stated"].) However, in *Edwards*, the appellate court remanded because there was "nothing in the record to indicate that the sentencing judge was cognizant" of any circumstances that could justify imposing consecutive sentences. (*Id*. at p. 450.) In contrast, as we have discussed, the court cited evidence that Hickman committed multiple violent acts at different times, and these circumstances would justify consecutive sentences. Hickman has not identified any evidence suggesting the court relied on any impermissible factor or evidence in rendering its sentence. Because the record does not "affirmatively show[] otherwise," we presume the trial court properly exercised its sentencing discretion. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313, disapproved of on other grounds by *People v. Cook* (2015) 60 Cal.4th 922, 939.)

## VI. The Abstract of Judgment Must Be Amended

Finally, the parties agree the abstract of judgment is inconsistent with the trial court's oral pronouncement of sentence. In such cases, the oral pronouncement controls, and we may order the court to correct the abstract of judgment accordingly. (*People v. Mitchell* (2001) 26 Cal.4th 181, 188; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We direct the trial court to amend the abstract of judgment as follows.

First, the abstract of judgment identifies count 4 as a voluntary manslaughter conviction under section 192,

28

subdivision (a). In its oral pronouncement, the court vacated that manslaughter conviction and redesignated it as an additional count of felony child abuse resulting in great bodily injury or death to a child, under section 273a, subdivision (a). We therefore direct the trial court to amend the abstract of judgment so that count 4 lists "273a(a)" and "GBI/Death to a child" under the columns labeled "Section No." and "Crime", respectively.

Second, the abstract of judgment describes the enhancement attached to count 5 as "PC 12022.7(a)." According to the court's oral pronouncement, the enhancement attached to count 5 fell under subdivision (d) of that section. We direct the trial court to amend the abstract of judgment to describe the enhancement attached to count 5 as "PC 12022.7(d)."

Third, on counts 6 and 7, the trial court's oral pronouncement imposed identical sentences of one-third the middle term sentence as the base term, or one year four months. The abstract of judgment describes both sentences as three-year lower term sentences. For counts 6 and 7, we direct the trial court to amend the abstract of judgment to list "M" under the "Term" column, add an "X" under the "1/3 Consecutive" column, remove the existing "X" under the "Consecutive Full Term" column, and change the entries under the "Principal or Consecutive Time Imposed" column from three years zero months, to one year four months.

Fourth, the abstract of judgment indicates, with parentheses, that the trial court imposed concurrent sentences on the enhancements attached to counts 6 and 7. However, the trial court's oral pronouncement imposed consecutive sentences on those enhancements. We direct the trial court to remove the parentheses surrounding the sentences for the enhancements

29

attached to counts 6 and 7 so those sentences are properly reflected as running consecutively.

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend the November 7, 2022, abstract of judgment to (1) amend count 4 to list "273a(a)" and "GBI/Death to a child" under the columns labeled "Section No." and "Crime", respectively; (2) describe the enhancement attached to count 5 as "PC 12022.7(d)"; (3) in counts 6 and 7, list "M" under the "Term" column, add an "X" under the "1/3 Consecutive" column, remove the existing "X" under the "Consecutive Full Term" column, and change the entries under the "Principal or Consecutive Time Imposed" column from three years zero months, to one year four months; and (4) remove the parentheses surrounding the sentences for the enhancements to counts 6 and 7 so those sentences are properly indicated to run consecutively. We further direct the trial court to send certified copies of the amended abstract of judgment to the Department of Corrections and Rehabilitation and to appellate counsel.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BERSHON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

We concur:

EGERTON, Acting P. J.

ADAMS, J.